JS 44C/SDNY
REV. 12/2005

**CIVIL COVER SHEET** 08 CV 0265

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Nashua Corporation Pension Plan Committee, John L. Patenaude, Margaret Callan and Karen Adams | State Street Bank and Trust Company State Street Global Advisors, Inc. |

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Jeffrey C. Block, Berman DeValerio Pease, One Liberty Sq., Boston, MA 01867 | (617) 542-8300 |

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

Breach of fiduciary duties under the Employee Retirement Income Security Act of 1974

Has this or a similar case been previously filed in SDNY at any time? No☐ Yes? ☒ Judge Previously Assigned  Hon. Richard J. Holwell

If yes, was this case Vol.☐ Invol. ☐ Dismissed. No☒ Yes ☐ If yes, give date _____ & Case No. _H.W_ ☐_☐_

(PLACE AN [x] IN ONE BOX ONLY)          NATURE OF SUIT

JAN 14 2008
U.S.D.C. S.D.N.Y.
CASHIERS

ACTIONS UNDER STATUTES

**TORTS**

**CONTRACT**
[ ] 110 INSURANCE
[ ] 120 MARINE
[ ] 130 MILLER ACT
[ ] 140 NEGOTIABLE INSTRUMENT
[ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151 MEDICARE ACT
[ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
[ ] 153 RECOVERY OF OVERPAYMENT OF VETERANS BENEFITS
[ ] 160 STOCKHOLDERS SUITS
[ ] 190 OTHER CONTRACT
[ ] 195 CONTRACT PRODUCT LIABILITY
[ ] 196 FRANCHISE

**PERSONAL INJURY**
[ ] 310 AIRPLANE
[ ] 315 AIRPLANE PRODUCT LIABILITY
[ ] 320 ASSAULT, LIBEL & SLANDER
[ ] 330 FEDERAL EMPLOYERS' LIABILITY
[ ] 340 MARINE
[ ] 345 MARINE PRODUCT LIABILITY
[ ] 350 MOTOR VEHICLE
[ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360 OTHER PERSONAL INJURY

**PERSONAL INJURY**
[ ] 362 PERSONAL INJURY - MED MALPRACTICE
[ ] 365 PERSONAL INJURY PRODUCT LIABILITY
[ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**
[ ] 370 OTHER FRAUD
[ ] 371 TRUTH IN LENDING
[ ] 380 OTHER PERSONAL PROPERTY DAMAGE
[ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**FORFEITURE/PENALTY**
[ ] 610 AGRICULTURE
[ ] 620 FOOD & DRUG
[ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 630 LIQUOR LAWS
[ ] 640 RR & TRUCK
[ ] 650 AIRLINE REGS
[ ] 660 OCCUPATIONAL SAFETY/HEALTH
[ ] 690 OTHER

**LABOR**
[ ] 710 FAIR LABOR STANDARDS ACT
[ ] 720 LABOR/MGMT RELATIONS
[ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
[ ] 740 RAILWAY LABOR ACT
[ ] 790 OTHER LABOR LITIGATION
[x] 791 EMPL RET INC SECURITY ACT

**BANKRUPTCY**
[ ] 422 APPEAL 28 USC 158
[ ] 423 WITHDRAWAL 28 USC 157

**PROPERTY RIGHTS**
[ ] 820 COPYRIGHTS
[ ] 830 PATENT
[ ] 840 TRADEMARK

**SOCIAL SECURITY**
[ ] 861 MIA (1395FF)
[ ] 862 BLACK LUNG (923)
[ ] 863 DIWC (405(g))
[ ] 863 DIWW (405(g))
[ ] 864 SSID TITLE XVI
[ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
[ ] 870 TAXES
[ ] 871 IRS-THIRD PARTY 26 USC 7609

OTHER STATUTES

[ ] 400 STATE REAPPORTIONMENT
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE/ICC RATES/ETC
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480 CONSUMER CREDIT
[ ] 490 CABLE/SATELLITE TV
[ ] 810 SELECTIVE SERVICE
[ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
[ ] 875 CUSTOMER CHALLENGE 12 USC 3410
[ ] 891 AGRICULTURE ACTS
[ ] 892 ECONOMIC STABILIZATION ACT
[ ] 893 ENVIRONMENTAL MATTERS
[ ] 894 ENERGY ALLOCATION ACT
[ ] 895 FREEDOM OF INFORMATION ACT
[ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
[ ] 950 CONSTITUTIONALITY OF STATE STATUTES
[ ] 890 OTHER STATUTORY ACTIONS

**ACTIONS UNDER STATUTES**

**REAL PROPERTY**
[ ] 210 LAND CONDEMNATION
[ ] 220 FORECLOSURE
[ ] 230 RENT LEASE & EJECTMENT
[ ] 240 TORTS TO LAND
[ ] 245 TORT PRODUCT LIABILITY
[ ] 290 ALL OTHER REAL PROPERTY

**CIVIL RIGHTS**
[ ] 441 VOTING
[ ] 442 EMPLOYMENT
[ ] 443 HOUSING ACCOMMODATIONS
[ ] 444 WELFARE
[ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
[ ] 446 AMERICANS WITH DISABILITIES -OTHER
[ ] 440 OTHER CIVIL RIGHTS

**PRISONER PETITIONS**
[ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255
[ ] 530 HABEAS CORPUS
[ ] 535 DEATH PENALTY
[ ] 540 MANDAMUS & OTHER
[ ] 550 CIVIL RIGHTS
[ ] 555 PRISON CONDITION

Check if demanded in complaint:

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.? IF SO, STATE:

DEMAND $_____ OTHER _____        JUDGE  Holwell        DOCKET NUMBER  07- CV-8488

Check YES only if demanded in complaint
JURY DEMAND: ☐ YES ☒ NO        NOTE: Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

(PLACE AN *x* IN ONE BOX ONLY)

**ORIGIN**

☒ 1 Original Proceeding

☐ 2a. Removed from State Court

☐ 2b. Removed from State Court AND at least one party is a pro se litigant

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from (Specify District)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judge Judgment

(PLACE AN *x* IN ONE BOX ONLY)

**BASIS OF JURISDICTION**

☐ 1 U.S. PLAINTIFF    ☐ 2 U.S. DEFENDANT    ☒ 3 FEDERAL QUESTION (U.S. NOT A PARTY)    ☐ 4 DIVERSITY

*IF DIVERSITY, INDICATE CITIZENSHIP BELOW.*
*(28 USC 1332, 1441)*

**CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)**

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF | DEF | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED *and* PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED *or* PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

DEFENDANT(S) ADDRESS UNKNOWN
    REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:    THIS ACTION SHOULD BE ASSIGNED TO:    ☐ WHITE PLAINS    ☒ FOLEY SQUARE
(DO NOT check either box if this a PRISONER PETITION.)

DATE
January 10 2008
RECEIPT #

SIGNATURE OF ATTORNEY OF RECORD

ADMITTED TO PRACTICE IN THIS DISTRICT
[ ] NO
[x] YES (DATE ADMITTED  Mo. _____  Yr. 1987 )
Attorney Bar Code # JCB-0387

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

J Michael McMahon, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

NASHUA CORPORATION PENSION
PLAN COMMITTEE, JOHN L.
PATENAUDE, MARGARET CALLAN
and KAREN ADAMS, TRUSTEES OF
THE NASHUA CORPORATION
HOURLY EMPLOYEES RETIREMENT
PLAN and THE NASHUA
CORPORATION RETIREMENT PLAN
FOR SALARIED EMPLOYEES

on behalf of the Plan,  and all other plans
similarly situated, and participants thereof,

Plaintiffs,

v.

STATE STREET BANK AND TRUST
COMPANY, STATE STREET GLOBAL
ADVISORS, INC., AND JOHN DOES 1-
20

Defendants.

Civil Action No. **08  CV  0265**

**CLASS ACTION COMPLAINT**



JAN 14 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs, the Nashua Corporation Pension Plan Committee, John L. Patenaude, Margaret

Callan and Karen Adams (collectively, "Nashua Pension Committee"), on behalf of the Plan, and

all other plans similarly situated, and participants thereof, by and through their undersigned

counsel, allege upon personal knowledge with respect to their own acts and upon information

and belief as to all other matters based upon the investigation made by and through its counsel,

as follows:

## NATURE OF THE ACTION

1.     This action arises from Defendants State Street Bank and Trust Company's ("State Street Bank") and State Street Global Advisors, Inc.'s ("SSgA") (collectively "State Street") violation of their obligations as fiduciaries under the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  Upon information and belief, State Street acted as a fiduciary and investment manager with respect to potentially thousands of ERISA plans that were pooled together as collective or commingled bank trusts to be invested in purportedly conservative bond funds ("Bond Funds").[1]  For instance, State Street acted as a fiduciary and investment manager with respect to the pension plan assets Nashua Corporation invested in the Bond Market Non-Lending Fund ("Bond Market Fund"), which State Street offered under the collective bank trust.

2.     State Street characterized the Bond Funds, including but not limited to the Bond Market Fund, as "enhanced bond index" funds whose performance objectives were to match or exceed designated bond market indices consisting of investment-grade assets.  State Street repeatedly represented that its fixed income strategies sought to "consistently exceed relevant benchmark returns by capturing excess returns overlooked or unattainable by less robust methodologies, *without incurring unnecessary investment risk.*"  State Street further represented that its core bond strategies "seek to add consistent returns over relevant indices while taking moderate active risk" and while "maintaining an appropriate relationship between risk and excess return."  State Street held out the Bond Funds to be actively managed funds with little investment risk and returns comparable to their respective benchmark indices.

3.     Although the full extent of State Street's misconduct has yet to be revealed, Plaintiffs recently discovered that State Street's investments, in reality, radically differed from its

---

[1] The term "Bond Funds" is more specifically defined below at paragraph 14.

stated investment strategies and risk assessment, causing Plaintiffs and all member of the class to have lost a significant amount of money as a result of State Street's mismanagement and breach of fiduciary duty under ERISA. For example, unbeknownst to the plan participants, State Street exposed up to 95% of certain Bond Funds to investments in subprime mortgages and also took highly leveraged positions in mortgage-related financial derivatives, creating an inappropriate level of risk for out of line with the stated investment objectives of these purportedly stable and predictable funds. During the summer of 2007, State Street's purportedly conservative Bond Funds fell dramatically from their benchmark indices because of the funds' over-exposure to risky assets and securities. For instance, although State Street represented that the divergence risk for the Bond Market Fund was 75 basis points, or 0.75%, from its benchmark Lehman Brothers Aggregate Bond Index ("Lehman Aggregate Index"), the Bond Market Fund experienced a loss by as much as 15% during the summer of 2007 while the Lehman Aggregate Index experienced a gain of 2.96% during this same time period.

4.    As a result of State Street's misconduct, hundreds of millions, if not billions, of dollars have likely been lost through retirement and pension plans that invested in the Bond Funds.

5.    This action is brought on behalf of Plaintiffs' ERISA plan, as well as all other similarly situated plans that offered the Bond Funds as investment options for their participants. All of these plans were subject to, and affected by, State Street's conduct in the same manner and with the same effect. As fiduciaries and participants of the Plan, Plaintiffs seek to recover losses to this plan for which State Street is personally liable pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109, and 1132(a)(2). In addition, under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Plaintiffs seek other equitable relief from State Street, including, without limitation,

3

injunctive relief and, as available under applicable law, constructive trust, restitution, equitable tracing, and other monetary relief.

6.    ERISA §§ 409(a) and 502(a)(2) authorize ERISA plan participants and plan fiduciaries, such as Plaintiffs, to sue in a representative capacity for losses suffered by the plans as a result of breaches of fiduciary duty.  Pursuant to that authority, Plaintiffs bring this action as a class action under Fed. R. Civ. P. 23 on behalf of plans, and participants and beneficiaries of plans, that offered the Bond Funds and suffered losses due to State Street's gross dereliction of its fiduciary duties under ERISA during the Class Period.

7.    In addition, because the information and documents on which Plaintiffs' claims are based are, for the most part, solely in State Street's possession, certain of Plaintiffs' allegations are by necessity upon information and belief.  At such time as Plaintiffs have had the opportunity to conduct discovery, Plaintiffs will, to the extent necessary and appropriate, amend this Complaint, or, if required, seek leave to amend, to add such other additional facts as are discovered that further support Plaintiffs' claims.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction pursuant to the provisions of 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

9.    Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) as Defendants may be found in this District as State Street maintains an office in this District.

## THE PARTIES

10.    Plaintiffs are the Nashua Corporation Pension Plan Committee and individual committee members of the pension plan, John L. Patenaude, Margaret Callan, and Karen Adams,

who are participants and have fiduciary responsibilities to oversee the retirement assets of the Nashua Corporation Retirement Plan for Salaried Employees and the retirement assets for the Nashua Corporation Hourly Employees Retirement Plan. (collectively, the "Plan"). Nashua Corporation is headquartered in Nashua, New Hampshire and manufactures and markets a wide variety of specialty imaging products and services to industrial and commercial customers to meet various print application needs. The Nashua Pension Committee and its individual members are fiduciaries as defined by ERISA. They exercise discretionary authority and control respecting the management and administration of the Plan and the disposition of the Plan's assets. Additionally, the Nashua Pension Committee members individually are plan participants who, as employees, are or may become eligible to receive a benefit from the Plan. The Nashua Pension Committee, as a fiduciary and the individual Pension Committee members as plan fiduciaries, participants and beneficiaries are authorized under ERISA §§ 409(a), 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109, 1132(a)(2) and (a)(3), to sue in a representative capacity for losses suffered by members of the Class as a result of Defendants' ERISA violations. In 1997, the Nashua Pension Committee entered into an agreement with State Street whereby State Street became the Investment Manager for certain assets in Nashua Corporation's pension plan. The Nashua Pension Committee since invested some of the Plan's assets in the Bond Market Fund, one of the Bond Funds involved in the instant suit.

11. Defendant **State Street Bank** is a registered financial holding company with its principal place of business in Boston, Massachusetts. State Street maintains an office in New York.

12. Defendant **SSgA** is the investment management arm of State Street Corporation and maintains its principal place of business in Boston, Massachusetts. SSgA currently has $1.9

trillion in assets under management and describes itself as the world's largest institutional asset manager.

13.    Defendants **John Does 1-20**.  Although Plaintiffs currently lack the names of those responsible for administering and ensuring State Street's duties and responsibilities as the Investment Manager under ERISA for the Bond Funds, Plaintiffs expect to amend the Complaint to include these individuals as Individual Defendants as soon as they have been adequately identified.

## CLASS ACTION ALLEGATIONS

14.    **Class Definition**.  Plaintiffs brings this action as a class action pursuant to Rules 23(a), (b)(1), (b)(2), and, in the alternative, (b)(3) of the Federal Rules of Civil Procedure on behalf of the Plan and its participants and beneficiaries and the following class of persons similarly situated (the "Class"):

> All qualified ERISA plans, and the participants and beneficiaries thereof, who were invested in the Bond Market Non-Lending Fund, the Intermediate Bond Fund for Employee Trusts, the Daily Bond Market Fund, the Core Intermediate Credit Bond Fund, the Daily Corporate / Government Credit Bond Fund, the SSGA Yield Plus Fund, the Total Bond Market fund, the SSGA Bond Market Fund, the Limited Duration Bond Fund or any other Bond Fund managed by State Street for qualified ERISA retirement plans that suffered losses as a result of the same conduct described herein (the "Bond Funds") between January 1, 2007 and October 5, 2007.  Specifically excluded from the Class are the individual Defendants herein, officers and/or directors of the Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which a Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party, other than qualified ERISA plans offered by State Street or any of its affiliates to its employees and which suffered losses as well due to investment in the Bond Funds.

15.    **Numerosity**.  The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiffs at

this time, and can only be ascertained through appropriate discovery, Plaintiffs believe that hundreds of ERISA qualified plans throughout the country offer the Bond Funds, and sustained losses as a result, and that these plans collectively have thousands of participants and beneficiaries.

16.     **Commonality**.  The claims of Plaintiffs and the members of the Class have a common origin and share a common basis.  The claims of all Class Members originate from the same misconduct, breaches of duties and violations of ERISA, perpetrated by the Defendants. Proceeding as a nationwide class is particularly appropriate here because the Bond Funds are held in collective trusts managed by State Street, in which assets of every plan that offers the Bond Funds are pooled, and, therefore, State Street's imprudent actions affected all plans that invested in the Bond Funds in the same manner.

17.     Furthermore, common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  The many questions of law and fact common to the Class include:

a.     Whether Defendants breached their fiduciary duties under ERISA;

b.     Whether Defendants deviated from the true and proper purpose of the Bond Funds when they invested in highly risky, exotic, and speculative investments in the Bond Funds;

c.     Whether Defendants failed to provide complete and accurate information to plan sponsors, fiduciaries, and participants when they invested in highly risky, exotic, and speculative investments in the Bond Funds;

d.     Whether Defendants' acts proximately caused losses to the plans at issue, and if so, the appropriate relief to which Plaintiff and the Class are entitled;

18.     **Typicality**.  Plaintiffs' claims are typical of the claims of the members of the Class because: (a) to the extent Plaintiffs seek relief on behalf of the Plans pursuant to ERISA § 502(a)(2), their claims on behalf of the Plan are not only typical to, but identical to a claim under this section brought by any Class member; and (2) to the extent Plaintiffs seek relief under ERISA § 502(a)(3) on behalf of themselves for equitable relief, that relief would affect all Class members equally.  If brought and prosecuted individually, each of the members of the Class would necessarily be required to prove the instant claims upon the same material and substantive facts, upon the same remedial theories and would be seeking the same relief.

19.     **Adequacy**.  Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action, complex, and ERISA litigation.  Plaintiffs have no interests antagonistic to or in conflict with those of the Class.  The proposed representatives will undertake to vigorously protect the interests of the absent members of the Class.

20.     **Rule 23(b)(1)(A) & (B) Requirements**.  Class action status in this ERISA action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.  Class action status also is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

21.     **Rule 23(b)(2) Requirements**.  Certification under 23(b)(2) is warranted because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby

making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

22.    **Rule 23(b)(3) Requirements**.  In the alternative, certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## SUBSTANTIVE ALLEGATIONS

### Background

23.    The Nashua Pension Committee invested the retirement fund assets of the Plan participants in State Street's Bond Market Fund.  The Bond Market Fund was one of the Bond Funds offered by State Street under a collective bank trust that pooled the assets of various pension and retirement plans for investment purposes.

24.    Defendant State Street Bank established the "State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans," on February 21, 1991, which was most recently amended and restated on August 15, 2005 (the "Trust Declaration").  Pursuant to this Trust Declaration, State Street Bank agreed to act as trustee on behalf of the funds listed at Schedule A of the Trust Declaration, attached as Exhibit 1 to the Complaint.

25.    Participation in the plans that invest in the Trust Declaration is limited to qualified investors who maintain various pension and/or retirement plans pursuant to ERISA and the Internal Revenue Code.

26.    SSgA and the Nashua Pension Committee entered into an Investment Management Agreement dated May 13, 1997, as subsequently amended (the "IMA").  Pursuant

to the IMA, the Nashua Pension Committee retained State Street as its Investment Manager for certain assets of the Plan.

27.    The IMA provides that "[t]he Funds shall be under the exclusive management and control of the Trustee in conformity with the provisions of this Declaration of Trust." In addition, the IMA provides that assets "shall be invested and reinvested in accordance with such investment objectives, guidelines and restrictions as the Trustee may specify in the Fund Declaration of such Fund." According to the attached Amended Fund Declaration governing the Bond Market Fund, the investment objective of the fund "shall be to match or exceed the return of the Lehman Brothers Aggregate Bond Index." The Fund Declaration further states that "[a]t the time of purchase, all securities purchased by the Fund will be rated at or above investment grade by either Standard & Poor's or Moody's Investor Services."

28.    As the IMA made clear, State Street had sole investment discretion with respect to the Bond Funds. Nashua had no control over the investment process or investment decisions of the Bond Funds.

29.    As alleged above, State Street served as the Investment Manager for the Bond Funds at issue in the Plan and, upon information and belief, hundreds of other plans as well. In this capacity, State Street was responsible for prudently and loyally managing the assets that were invested in the Bond Funds.

30.    State Street acknowledged its status as Investment Manager in the Plan documents for the Plan.

31.    Upon information and belief, State Street has similarly acknowledged its fiduciary status as Investment Manager for the Bond Funds for all other ERISA qualified funds that offer the Bond Funds as an investment option for participants' retirement savings.

32.    Numerous ERISA plans offered the Bond Funds as a conservative investment option for participants' retirement savings. ERISA plans and plan participants directed hundreds of millions of dollars of retirement savings into the Bond Funds.

33.    On information and belief, State Street pooled the assets of the respective Bond Funds and managed the collective fund pursuant to a common strategy. As alleged herein, at some juncture in early 2007, State Street's management deviated from its stated-strategy and directed the assets into leveraged positions on high-risk investments, including mortgage-backed securities, exposing all of the Bond Funds to enormous risk.

34.    Because all of the Bond Funds were held in collective trusts by State Street and centrally managed, State Street's imprudent conduct with respect to the Bond Fund affected all ERISA plans that offered the Bond Funds in the same manner, that is, they all were exposed to the same unacceptable risk, and suffered losses because of the same imprudent management by State Street.

### The Fund's Conservative Investment Profile

35.    Throughout the Class Period, State Street depicted its "core fixed investment approach" as "an enhanced bond indexing approach." State Street characterized this enhanced indexing approach as a strategy that sought to "exceed relevant benchmark returns" without incurring unnecessary investment risk. State Street consistently emphasized that it employed a low risk, value-added approach with respect to the Bond Funds. Thus, investors in the Bond Funds were assured that State Street added value over the index it was tracking while mirroring its risk profile.

36.    On December 22, 1998, SSgA made a presentation to the Nashua Pension Committee which provided an overview of the performance and characteristics of the Bond

11

Market Fund strategy. The presentation emphasized the conservative nature of the investment. SSgA stated that its controls involved a maximum tracking error of 75 basis points, or 0.75%, from the Lehman Aggregate Index. SSgA further stated that its investment strategy for mortgages was to "construct diversified mortgage portfolios that will have good relative performance *in a number of scenarios.*" Lastly, SSgA noted that all of its investments in the Bond Market Fund would be investment-grade by either Moody's Investor Services or Standard & Poor. SSgA also included a bar graph which showed the Bond Market Fund's performance compared to the performance of the Lehman Aggregate Bond Index since its inception in 1987. This graph shows that the Bond Market Fund rarely diverged from the Lehman Aggregate Index by more than a few basis points.

37.      State Street consistently emphasized that the Bond Funds were low risk, value added investments. For example, State Street explicitly stated that it invested only in investment-grade securities as opposed to higher risk non-investment grade securities. In addition, State Street tracked the performance of the Bond Funds through conservative fixed-income indices, such as the Lehman Aggregate Index. These representations underscored the fact that the Bond Funds were intended to be a relatively low risk, stable investment with fairly predictable returns.

### State Street's Conduct

38.      State Street significantly deviated from its stated investment strategy with respect to the Bond Funds. In or around early 2007, Defendants began to heavily invest the Bond Funds in mortgage-related financial instruments in direct contravention of its fiduciary duties to members of the Class. In fact, State Street at times exposed up to 95% of certain Bond Funds' assets to securitized subprime home equity loans. Many of the other State Street enhanced bond

funds similarly lacked sufficient diversification such that the Bond Funds were over-exposed in mortgage-related instruments unbeknownst to members of the Class. For example, between September 2006 and March 2007, the percentage of the Daily Government/Corporate Bond Fund comprised of mortgage-backed securities nearly tripled from 8.56% to 24.95%.

39.    In addition, State Street significantly deviated from its investment strategy when it began investing heavily in investments that were out of line with its benchmark indices. For example, as of July 31, 2007, the Bond Market Fund's portfolio had invested over 27% of the portfolio in asset-backed securities comprised of home equity loans, while the Lehman index it was supposedly tracking was exposed to less than a *quarter of one percent* to such asset-backed securities. Thus, State Street's investment strategy clearly diverged from its benchmarking index.

40.    State Street also placed Bond Fund assets in non-investment grade instruments in direct violation of its prior representations that all investments would be investment grade. State Street recently revealed that some of the Bond Funds experienced significant negative performance due to their exposure to the ABX Indices. The ABX Indices represent swaps whose returns are derived from underlying credit default swaps of the 20 representative subprime mortgage securitizations issued in the United States over a 6 month time frame. Funds that were exposed to the ABX Indices experienced negative performance as a result of spread widening in BBB-rated securities secured by subprime mortgages.

41.    State Street's altered investment strategy resulted in highly leveraged portfolios that exaggerated the Bond Funds' risks and exposure to losses. For instance, as of July 31, 2007, the market-adjusted notional value of the Bond Market Fund's investment portfolio "exceeded invested capital by a factor of approximately 6.10," indicating that the portfolio was leveraged 6

to 1 during this time period. This highly leveraged position, which one would expect to exist in hedge funds and not ERISA retirement/pension plans, produced devastating results for plans invested in the Bond Funds during the Class Period. In late August of 2007, Plaintiffs received a letter from SSgA informing it that the Bond Market Fund had a loss of 12.26% in the month of August. During this same time period, the Lehman Aggregate Bond Index had *increased* 1.2%. As a result of State Street's over-exposure in mortgage-related securities, Plaintiffs lost approximately $5.6 million in the Bond Market Fund. Upon information and belief, potentially thousands of similarly situated plans also suffered substantial losses from investments in the Bond Funds as a result of State Street's ERISA violations.

42.    Defendants, although purporting to actively manage enhanced index funds that would closely mirror the risks and track the performance of the conservative Lehman benchmark indices, instead violated their fiduciary duties under ERISA by significantly deviating from prudent investment decisions. The Defendants exposed the Bond Funds to risks and market volatility far beyond those affecting the benchmark indices, they created risks far out of line with the Bond Funds' stated investment objectives, and misrepresented to members of the Class the true nature of the risks inherent in State Street's actual investment strategy of the Bond Funds.

43.    As a fiduciary of ERISA-qualified retirement and pension plans, State Street agreed to be bound by the high standards of care imposed on it under ERISA. State Street violated its ERISA obligations by failing to exercise the standard of care that a prudent investment manager in the same or similar circumstances would have exercised. ERISA § 404(a), 29 U.S.C. § 1104(a).

## CLAIMS FOR RELIEF

## COUNT I

## AGAINST STATE STREET BANK, SSGA AND JOHN DOES 1-20 FOR FAILURE TO PRUDENTLY AND LOYALLY MANAGE THE PLANS AND THEIR ASSETS

44.     Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

45.     Under Section 3(21) of ERISA, 29 U.S.C. § 1002(21), State Street was at all relevant times an ERISA fiduciary as to the retirement plans and plan assets invested in the Bond Funds.

46.     Under Section 3(38) of ERISA, 29 U.S.C. § 1002(38), State Street was at all relevant times the Investment Manager of the Bond Funds that were made available to retirement plans and plan participants, including Plaintiffs' Plan.

47.     As alleged above, the scope of the fiduciary duties and responsibilities of the State Street included managing the assets of the Bond Funds.

48.     The Defendants were obligated to discharge their duties with respect to the Bond Funds with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.   ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

49.     Yet, contrary to their duties and obligations under ERISA, the Defendants failed to loyally and prudently manage the assets of the Plan in the Bond Funds managed by State Street.  Specifically, State Street breached its duties to the participants, in violation of ERISA § 404(a), by, *inter alia*, (a) failing to provide complete and accurate information regarding the

investments it made in the Bond Funds, and specifically, its decision to invest in highly risky and speculative securities and derivatives instead of the stable, and conservative investments as was appropriate for the Bond Funds; (b) failing to notify Plaintiffs or the Plan of State Street's change in investment strategy, (c) altering the Bond Funds' investment strategy to include investments fundamentally inconsistent with the stated purposes of the Bond Funds, (d) exposing the Bond Funds to excessive levels of risk through inappropriate leverage and accumulation of investments in mortgage-related financial derivatives, (e) failing to maintain sufficient diversification in the investments held by the Bond Funds in light of their stated objectives, and (f) generally failing to invest and manage the assets of the Bond Funds in the manner of a reasonably prudent fiduciary acting under similar circumstances.

50.    Moreover, the Defendants failed to conduct an appropriate investigation of the merits of its highly risky and speculative investment management decisions even in light of the high risk of these inappropriate investments and the particular dangers that these holdings posed to the Bond Funds.  Such an investigation would have revealed to a reasonably prudent fiduciary the imprudence of mismanaging the assets of the Bond Funds in the manner alleged herein.  A reasonably prudent fiduciary would have managed the assets according to their state objective as opposed to gambling with participants' retirement savings as Defendants did in this case.

51.    As a consequence of the Defendants' breaches of fiduciary duties alleged in this Count, the Bond Funds suffered massive losses.  Had Defendants discharged their fiduciary duties to prudently invest the Bond Funds' assets, the losses suffered would have been minimized or avoided.  Therefore, as a direct and proximate result of the breaches of fiduciary duty alleged herein, Plaintiffs' Plan and the other Class members, lost hundreds of millions of dollars of retirement savings.

52.     Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a), 1132(a)(2) & (a)(3), the Defendants are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## LOSS CAUSATION

53.     The State Street Bond Funds suffered hundreds of millions of dollars in losses because substantial assets of the State Street Bond Funds were imprudently invested or allowed to be invested by Defendants during the Class Period, in breach of Defendants' fiduciary duties.

54.     Defendants are liable for these losses because they were caused by Defendants' breaches of fiduciary duty, including but not limited to, their imprudent decision to alter the investment strategy of the Bond Funds' and invest the Bond Funds' assets in volatile mortgage-backed instruments, engage in highly leveraged and risky transactions with Bond Fund assets, invest Bond Funds' assets in securities that are not included in the indices which State Street purportedly designed the Bond Funds to track, all of which was imprudent under the circumstances presented here.

55.     Had the Defendants properly discharged their fiduciary duties, the ERISA plans that offered the Bond Funds and for which State Street served as Investment Manager, would have avoided some or all of the losses that the plans, and, indirectly, the plan participants and beneficiaries suffered.

## REMEDY FOR BREACHES OF FIDUCIARY DUTIES

56.     The Defendants breached their fiduciary duties in that they knew, or should have known, the facts as alleged above, and therefore knew, or should have known, that the Bond Funds' assets should not have been invested in mortgage-backed instruments during the Class Period, or otherwise invested improperly as described herein.

57.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes the Secretary of Labor, or a participant, beneficiary or fiduciary of a plan to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109. Section 409 requires "any person who is a fiduciary...who breaches any of the...duties imposed upon fiduciaries...to make good to such plan any losses to the plan...." Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate...."

58.    With respect to calculation of the losses to the Bond Funds, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the Plans would not have made or maintained their investments in the challenged investment and, instead, prudent fiduciaries would have invested the Plan's assets prudently and appropriately, and in this instance, according to the stated objective of the Bond Funds. In this way, the remedy restores the Plan's lost value and puts the participants in the position they would have been in if the Plan had been properly administered.

59.    Plaintiffs and the Class are therefore entitled to relief from the Defendants in the form of: (a) a monetary payment to the ERISA plans that offered the Bond Funds to make good to the ERISA plans the losses resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (b) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a), 502(a)(2) and (3), 29 U.S.C. §§ 1109(a), 1132(a)(2) and (3); (c) injunctive and other appropriate equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to the extent applicable for knowing participation by a non-fiduciary in a fiduciary breach; (d) reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (e)

taxable costs and interest on these amounts, as provided by law; and (6) such other legal or equitable relief as may be just and proper.

60.    Under ERISA, each Defendant is jointly and severally liable for the losses suffered in this case.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.    A Determination that this action is a proper class action and certifying Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure;

B.    A Declaration that the Defendants, and each of them, have breached their ERISA fiduciary duties to Plaintiffs, the Plan and the Class;

C.    A Declaration that the Defendants, and each of them, are not entitled to the protection of ERISA § 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B);

D.    An Order compelling the Defendants to make good to the ERISA plans that offered the Bond Funds for which State Street served as the Investment Manager all losses to the ERISA plans resulting from Defendants' breaches of their fiduciary duties, including losses to the plans resulting from imprudent investment of the Bond Fund's assets, and to restore to the plans all profits the Defendants made through use of the plans' assets, and to restore to the plans all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations;

E.    Imposition of a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the plans as the result of breaches of fiduciary duty;

F.    An Order requiring Defendants to appoint one or more independent fiduciaries to participate in the management of the Bond Funds for ERISA plans;

G.    Actual damages in the amount of any losses to the ERISA plans included in the Class, to be allocated among the participants' individual accounts within the plans in proportion to the accounts' losses as required by ERISA;

H.    An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

I.    An Order awarding attorneys' fees pursuant to the common fund doctrine, 29 U.S.C. § 1132(g), and other applicable law;

J.    An Order for equitable restitution and other appropriate equitable and injunctive relief against the Defendants; and

K.    Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a jury trial of all issues so triable.

Date:   January 11, 2008

Respectfully submitted,

**BERMAN, DEVALERIO PEASE
TABACCO BURT & PUCILLO**

By: _____
Jeffrey C. Block, Esq. (JCB 0387)
Patrick T. Egan, Esq.
Kristen D. Tremble, Esq.
One Liberty Square
Boston, Massachusetts 02109
Telephone: (617) 542-8300
Facsimile:  (617) 542-1194

- and –

Anne F. O'Berry, Esq. (AO-0148)
Esperante Building
222 Lakeview Avenue
Suite 900
West Palm Beach, FL 33401
Telephone: (561) 835-9400
Facsimile: (561) 835-0322

*Counsel for Nashua Corporation Pension Plan
Committee, John L. Patenaude, Margaret Callan
and Karen Adams*

21