## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NASHUA CORPORATION PENSION PLAN COMMITTEE, JOHN L. PATENAUDE, MARGARET CALLAN and KAREN ADAMS, TRUSTEES OF THE NASHUA CORPORATION HOURLY EMPLOYEES RETIREMENT PLAN and THE NASHUA CORPORATION RETIREMENT PLAN FOR SALARIED EMPLOYEES<br><br>on behalf of the Plan, and all other plans similarly situated, and participants thereof,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL ADVISORS, INC., AND JOHN DOES 1-20<br><br>Defendants. | Civil Action No. 08-CV-0265<br><br>**AMENDED CLASS ACTION COMPLAINT** |

Plaintiffs, the Nashua Corporation Pension Plan Committee, John L. Patenaude, Margaret Callan and Karen Adams (collectively, "Nashua Pension Committee"), on behalf of the Plan, and all other plans similarly situated, and participants thereof, by and through their undersigned counsel, allege upon personal knowledge with respect to their own acts and upon information and belief as to all other matters based upon the investigation made by and through its counsel, as follows:

## NATURE OF THE ACTION

1.     This action arises from Defendants State Street Bank and Trust Company's ("State Street Bank") and State Street Global Advisors, Inc.'s ("SSgA") (collectively "State Street") violation of their obligations as fiduciaries under the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  Upon information and belief, State Street acted as a fiduciary and investment manager with respect to potentially thousands of ERISA plans that were pooled together as collective or commingled bank trusts to be invested in purportedly conservative bond funds ("Bond Funds").[1]  For instance, State Street acted as a fiduciary and investment manager with respect to the pension plan assets Nashua Corporation invested in the Bond Market Non-Lending Fund ("Bond Market Fund"), which State Street offered under the collective bank trust.

2.     State Street characterized the Bond Funds, including but not limited to the Bond Market Fund, as "enhanced bond index" funds whose performance objectives were to match or exceed designated bond market indices consisting of investment-grade assets.  State Street repeatedly represented that its fixed income strategies sought to "consistently exceed relevant benchmark returns by capturing excess returns overlooked or unattainable by less robust methodologies, *without incurring unnecessary investment risk.*"  State Street further represented that its core bond strategies "seek to add consistent returns over relevant indices while taking moderate active risk" and while "maintaining an appropriate relationship between risk and excess return."  State Street held out the Bond Funds to be actively managed funds with little investment risk and returns comparable to their respective benchmark indices.

3.     Although the full extent of State Street's misconduct has yet to be revealed, Plaintiffs recently discovered that State Street's investments, in reality, radically differed from its

---

[1] The term "Bond Funds" is more specifically defined below at paragraph 14.

stated investment strategies and risk assessment, causing Plaintiffs and all member of the class to have lost a significant amount of money as a result of State Street's mismanagement and breach of fiduciary duty under ERISA. For example, unbeknownst to the plan participants, State Street exposed up to 95% of certain Bond Funds to investments in subprime mortgages and also took highly leveraged positions in mortgage-related financial derivatives, creating an inappropriate level of risk far out of line with the stated investment objectives of these purportedly stable and predictable funds. During the summer of 2007, State Street's purportedly conservative Bond Funds fell dramatically from their benchmark indices because of the funds' over-exposure to risky assets and securities. For instance, although State Street represented that the divergence risk for the Bond Market Fund was 75 basis points, or 0.75%, from its benchmark Lehman Brothers Aggregate Bond Index ("Lehman Aggregate Index"), the Bond Market Fund experienced a loss by as much as 15% during the summer of 2007 while the Lehman Aggregate Index experienced a gain of 2.96% during this same time period.

4.     As a result of State Street's misconduct, hundreds of millions, if not billions, of dollars have likely been lost through retirement and pension plans that invested in the Bond Funds.

5.     This action is brought on behalf of Plaintiffs' ERISA plan, as well as all other similarly situated plans that offered the Bond Funds as investment options for their participants. All of these plans were subject to, and affected by, State Street's conduct in the same manner and with the same effect. As fiduciaries and participants[2] of the Plan, Plaintiffs seek to recover losses to this plan for which State Street is personally liable pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109, and 1132(a)(2). In addition, under § 502(a)(3) of ERISA, 29

---

[2] Nashua Pension Committee members John L. Patenaude and Margaret Callan are participants in the Nashua Corporation Retirement Plan For Salaried Employees.

U.S.C. § 1132(a)(3), Plaintiffs seek other equitable relief from State Street, including, without limitation, injunctive relief and, as available under applicable law, constructive trust, restitution, equitable tracing, and other monetary relief.

6.      ERISA §§ 409(a) and 502(a)(2) authorize ERISA plan participants and plan fiduciaries, such as Plaintiffs, to sue in a representative capacity for losses suffered by the plans as a result of breaches of fiduciary duty.  Pursuant to that authority, Plaintiffs bring this action as a class action under Fed. R. Civ. P. 23 on behalf of plans, and participants and beneficiaries of plans, that offered the Bond Funds and suffered losses due to State Street's gross dereliction of its fiduciary duties under ERISA during the Class Period.

7.      In addition, because the information and documents on which Plaintiffs' claims are based are, for the most part, solely in State Street's possession, certain of Plaintiffs' allegations are by necessity upon information and belief.  At such time as Plaintiffs have had the opportunity to conduct discovery, Plaintiffs will, to the extent necessary and appropriate, amend this Complaint, or, if required, seek leave to amend, to add such other additional facts as are discovered that further support Plaintiffs' claims.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to the provisions of 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

9.      Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) as Defendants may be found in this District as State Street maintains an office in this District.

## THE PARTIES

10.     Plaintiffs are the Nashua Corporation Pension Plan Committee and individual committee members of the pension plan, John L. Patenaude, Margaret Callan, and Karen Adams, who have fiduciary responsibilities to oversee the retirement assets of the Nashua Corporation Retirement Plan for Salaried Employees and the retirement assets for the Nashua Corporation Hourly Employees Retirement Plan  (collectively, the "Plan").  Nashua Corporation is headquartered in Nashua, New Hampshire and manufactures and markets a wide variety of specialty imaging products and services to industrial and commercial customers to meet various print application needs.  The Nashua Pension Committee and its individual members are fiduciaries as defined by ERISA.  They exercise discretionary authority and control respecting the management and administration of the Plan and the disposition of the Plan's assets.  Additionally, Nashua Pension Committee members John L. Patenaude and Margaret Callan are participants in the Nashua Corporation Retirement Plan For Salaried Employees who, as employees, are or may become eligible to receive a benefit from the Plan.  The Nashua Pension Committee, as a fiduciary, and the individual Pension Committee members as plan fiduciaries, participants and beneficiaries are authorized under ERISA §§ 409(a), 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109, 1132(a)(2) and (a)(3), to sue in a representative capacity for losses suffered by members of the Class as a result of Defendants' ERISA violations.  In 1997, the Nashua Pension Committee entered into an agreement with State Street whereby State Street became the Investment Manager for certain assets in Nashua Corporation's pension plan.  The Nashua Pension Committee since invested some of the Plan's assets in the Bond Market Fund, one of the Bond Funds involved in the instant suit.

11.    Defendant **State Street Bank** is a registered financial holding company with its principal place of business in Boston, Massachusetts. State Street maintains an office in New York.

12.    Defendant **SSgA** is the investment management arm of State Street Corporation and maintains its principal place of business in Boston, Massachusetts. SSgA currently has $1.9 trillion in assets under management and describes itself as the world's largest institutional asset manager.

13.    Defendants **John Does 1-20**. Although Plaintiffs currently lack the names of those responsible for administering and ensuring State Street's duties and responsibilities as the Investment Manager under ERISA for the Bond Funds, Plaintiffs expect to amend the Complaint to include these individuals as Individual Defendants as soon as they have been adequately identified.

## CLASS ACTION ALLEGATIONS

14.    **Class Definition**.  Plaintiffs brings this action as a class action pursuant to Rules 23(a), (b)(1), (b)(2), and, in the alternative, (b)(3) of the Federal Rules of Civil Procedure on behalf of the Plan and its participants and beneficiaries and the following class of persons similarly situated (the "Class"):

> All qualified ERISA plans, and the participants and beneficiaries thereof, who were invested in the Bond Market Non-Lending Fund, the Intermediate Bond Fund for Employee Trusts, the Daily Bond Market Fund, the Core Intermediate Credit Bond Fund, the Daily Corporate / Government Credit Bond Fund, the SSGA Yield Plus Fund, the Total Bond Market fund, the SSGA Bond Market Fund, the Limited Duration Bond Fund or any other Bond Fund managed by State Street for qualified ERISA retirement plans that suffered losses as a result of the same conduct described herein (the "Bond Funds") between January 1, 2007 and October 5, 2007.  Specifically excluded from the Class are the individual Defendants herein, officers and/or directors of the Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in

which a Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party, other than qualified ERISA plans offered by State Street or any of its affiliates to its employees and which suffered losses as well due to investment in the Bond Funds.

15.  **Numerosity**. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe that hundreds of ERISA qualified plans throughout the country offer the Bond Funds, and sustained losses as a result, and that these plans collectively have thousands of participants and beneficiaries.

16.  **Commonality**. The claims of Plaintiffs and the members of the Class have a common origin and share a common basis. The claims of all Class Members originate from the same misconduct, breaches of duties and violations of ERISA, perpetrated by the Defendants. Proceeding as a nationwide class is particularly appropriate here because the Bond Funds are held in collective trusts managed by State Street, in which assets of every plan that offers the Bond Funds are pooled, and, therefore, State Street's imprudent actions affected all plans that invested in the Bond Funds in the same manner.

17.  Furthermore, common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. The many questions of law and fact common to the Class include:

a.  Whether Defendants breached their fiduciary duties under ERISA;

b.  Whether Defendants deviated from the true and proper purpose of the Bond Funds when they invested in highly risky, exotic, and speculative investments in the Bond Funds;

c. Whether Defendants failed to provide complete and accurate information to plan sponsors, fiduciaries, and participants when they invested in highly risky, exotic, and speculative investments in the Bond Funds;

d. Whether Defendants' acts proximately caused losses to the plans at issue, and if so, the appropriate relief to which Plaintiff and the Class are entitled;

18. **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class because: (a) to the extent Plaintiffs seek relief on behalf of the Plans pursuant to ERISA § 502(a)(2), their claims on behalf of the Plan are not only typical to, but identical to a claim under this section brought by any Class member; and (2) to the extent Plaintiffs seek relief under ERISA § 502(a)(3) on behalf of themselves for equitable relief, that relief would affect all Class members equally. If brought and prosecuted individually, each of the members of the Class would necessarily be required to prove the instant claims upon the same material and substantive facts, upon the same remedial theories and would be seeking the same relief.

19. **Adequacy**. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action, complex, and ERISA litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class. The proposed representatives will undertake to vigorously protect the interests of the absent members of the Class.

20. **Rule 23(b)(1)(A) & (B) Requirements**. Class action status in this ERISA action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants. Class action status also is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to

individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

21.    **Rule 23(b)(2) Requirements**.  Certification under 23(b)(2) is warranted because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

22.    **Rule 23(b)(3) Requirements**.  In the alternative, certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## SUBSTANTIVE ALLEGATIONS

### Background

23.    The Nashua Pension Committee invested the retirement fund assets of the Plan participants in State Street's Bond Market Fund.  The Bond Market Fund was one of the Bond Funds offered by State Street under a collective bank trust that pooled the assets of various pension and retirement plans for investment purposes.

24.    Defendant State Street Bank established the "State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans," on February 21, 1991, which was most recently amended and restated on August 15, 2005 (the "Trust Declaration").  Pursuant to this Trust Declaration, State Street Bank agreed to act as trustee on behalf of the funds listed at Schedule A of the Trust Declaration, attached as Exhibit 1 to the Complaint.

25.    Participation in the plans that invest in the Trust Declaration is limited to qualified investors who maintain various pension and/or retirement plans pursuant to ERISA and the Internal Revenue Code.

26.    SSgA and the Nashua Pension Committee entered into an Investment Management Agreement dated May 13, 1997, as subsequently amended (the "IMA").  Pursuant to the IMA, the Nashua Pension Committee retained State Street as its Investment Manager for certain assets of the Plan.

27.    The IMA provides that "[t]he Funds shall be under the exclusive management and control of the Trustee in conformity with the provisions of this Declaration of Trust."  In addition, the IMA provides that assets "shall be invested and reinvested in accordance with such investment objectives, guidelines and restrictions as the Trustee may specify in the Fund Declaration of such Fund."  According to the attached Amended Fund Declaration governing the Bond Market Fund, the investment objective of the fund "shall be to match or exceed the return of the Lehman Brothers Aggregate Bond Index."  The Fund Declaration further states that "[a]t the time of purchase, all securities purchased by the Fund will be rated at or above investment grade by either Standard & Poor's or Moody's Investor Services."

28.    As the IMA made clear, State Street had sole investment discretion with respect to the Bond Funds.  Nashua had no control over the investment process or investment decisions of the Bond Funds.

29.    As alleged above, State Street served as the Investment Manager for the Bond Funds at issue in the Plan and, upon information and belief, hundreds of other plans as well.  In this capacity, State Street was responsible for prudently and loyally managing the assets that were invested in the Bond Funds.

30.    State Street acknowledged its status as Investment Manager in the Plan documents for the Plan.

31.    Upon information and belief, State Street has similarly acknowledged its fiduciary status as Investment Manager for the Bond Funds for all other ERISA qualified funds that offer the Bond Funds as an investment option for participants' retirement savings.

32.    Numerous ERISA plans offered the Bond Funds as a conservative investment option for participants' retirement savings.  ERISA plans and plan participants directed hundreds of millions of dollars of retirement savings into the Bond Funds.

33.    On information and belief, State Street pooled the assets of the respective Bond Funds and managed the collective fund pursuant to a common strategy.  As alleged herein, at some juncture in early 2007, State Street's management deviated from its stated-strategy and directed the assets into leveraged positions on high-risk investments, including mortgage-backed securities, exposing all of the Bond Funds to enormous risk.

34.    Because all of the Bond Funds were held in collective trusts by State Street and centrally managed, State Street's imprudent conduct with respect to the Bond Fund affected all ERISA plans that offered the Bond Funds in the same manner, that is, they all were exposed to the same unacceptable risk, and suffered losses because of the same imprudent management by State Street.

### The Fund's Conservative Investment Profile

35.    Throughout the Class Period, State Street depicted its "core fixed investment approach" as "an enhanced bond indexing approach."  State Street characterized this enhanced indexing approach as a strategy that sought to "exceed relevant benchmark returns" without incurring unnecessary investment risk.  State Street consistently emphasized that it employed a

low risk, value-added approach with respect to the Bond Funds. Thus, investors in the Bond Funds were assured that State Street added value over the index it was tracking while mirroring its risk profile.

36.    On December 22, 1998, SSgA made a presentation to the Nashua Pension Committee which provided an overview of the performance and characteristics of the Bond Market Fund strategy. The presentation emphasized the conservative nature of the investment. SSgA stated that its controls involved a maximum tracking error of 75 basis points, or 0.75%, from the Lehman Aggregate Index. SSgA further stated that its investment strategy for mortgages was to "construct diversified mortgage portfolios that will have good relative performance *in a number of scenarios*." Lastly, SSgA noted that all of its investments in the Bond Market Fund would be investment-grade by either Moody's Investor Services or Standard & Poor. SSgA also included a bar graph which showed the Bond Market Fund's performance compared to the performance of the Lehman Aggregate Bond Index since its inception in 1987. This graph shows that the Bond Market Fund rarely diverged from the Lehman Aggregate Index by more than a few basis points.

37.    State Street consistently emphasized that the Bond Funds were low risk, value added investments. For example, State Street explicitly stated that it invested only in investment-grade securities as opposed to higher risk non-investment grade securities. In addition, State Street tracked the performance of the Bond Funds through conservative fixed-income indices, such as the Lehman Aggregate Index. These representations underscored the fact that the Bond Funds were intended to be a relatively low risk, stable investment with fairly predictable returns.

**State Street's Conduct**

38.    State Street significantly deviated from its stated investment strategy with respect to the Bond Funds.  In or around early 2007, Defendants began to heavily invest the Bond Funds in mortgage-related financial instruments in direct contravention of its fiduciary duties to members of the Class.  In fact, State Street at times exposed up to 95% of certain Bond Funds' assets to securitized subprime home equity loans.  Many of the other State Street enhanced bond funds similarly lacked sufficient diversification such that the Bond Funds were over-exposed in mortgage-related instruments unbeknownst to members of the Class.  For example, between September 2006 and March 2007, the percentage of the Daily Government/Corporate Bond Fund comprised of mortgage-backed securities nearly tripled from 8.56% to 24.95%.

39.    In addition, State Street significantly deviated from its investment strategy when it began investing heavily in investments that were out of line with its benchmark indices.  For example, as of July 31, 2007, the Bond Market Fund's portfolio had invested over 27% of the portfolio in asset-backed securities comprised of home equity loans, while the Lehman index it was supposedly tracking was exposed to less than a *quarter of one percent* to such asset-backed securities.  Thus, State Street's investment strategy clearly diverged from its benchmarking index.

40.    State Street also placed Bond Fund assets in non-investment grade instruments in direct violation of its prior representations that all investments would be investment grade.  State Street recently revealed that some of the Bond Funds experienced significant negative performance due to their exposure to the ABX Indices.  The ABX Indices represent swaps whose returns are derived from underlying credit default swaps of the 20 representative subprime mortgage securitizations issued in the United States over a 6 month time frame.  Funds that were

exposed to the ABX Indices experienced negative performance as a result of spread widening in BBB-rated securities secured by subprime mortgages.

41.    State Street's altered investment strategy resulted in highly leveraged portfolios that exaggerated the Bond Funds' risks and exposure to losses.  For instance, as of July 31, 2007, the market-adjusted notional value of the Bond Market Fund's investment portfolio "exceeded invested capital by a factor of approximately 6.10," indicating that the portfolio was leveraged 6 to 1 during this time period.  This highly leveraged position, which one would expect to exist in hedge funds and not ERISA retirement/pension plans, produced devastating results for plans invested in the Bond Funds during the Class Period.  In late August of 2007, Plaintiffs received a letter from SSgA informing it that the Bond Market Fund had a loss of 12.26% in the month of August.  During this same time period, the Lehman Aggregate Bond Index had *increased* 1.2%. As a result of State Street's over-exposure in mortgage-related securities, Plaintiffs lost approximately $5.6 million in the Bond Market Fund.  Upon information and belief, potentially thousands of similarly situated plans also suffered substantial losses from investments in the Bond Funds as a result of State Street's ERISA violations.

42.    Defendants, although purporting to actively manage enhanced index funds that would closely mirror the risks and track the performance of the conservative Lehman benchmark indices, instead violated their fiduciary duties under ERISA by significantly deviating from prudent investment decisions.  The Defendants exposed the Bond Funds to risks and market volatility far beyond those affecting the benchmark indices, they created risks far out of line with the Bond Funds' stated investment objectives, and misrepresented to members of the Class the true nature of the risks inherent in State Street's actual investment strategy of the Bond Funds.

14

43.    As a fiduciary of ERISA-qualified retirement and pension plans, State Street agreed to be bound by the high standards of care imposed on it under ERISA.  State Street violated its ERISA obligations by failing to exercise the standard of care that a prudent investment manager in the same or similar circumstances would have exercised.  ERISA § 404(a), 29 U.S.C. § 1104(a).

## CLAIMS FOR RELIEF

## COUNT I

## AGAINST STATE STREET BANK,  SSGA AND JOHN DOES 1-20 FOR FAILURE TO PRUDENTLY AND LOYALLY MANAGE THE PLANS AND THEIR ASSETS

44.    Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

45.    Under Section 3(21) of ERISA, 29 U.S.C. § 1002(21), State Street was at all relevant times an ERISA fiduciary as to the retirement plans and plan assets invested in the Bond Funds.

46.    Under Section 3(38) of ERISA, 29 U.S.C. § 1002(38), State Street was at all relevant times the Investment Manager of the Bond Funds that were made available to retirement plans and plan participants, including Plaintiffs' Plan.

47.    As alleged above, the scope of the fiduciary duties and responsibilities of the State Street included managing the assets of the Bond Funds.

48.    The Defendants were obligated to discharge their duties with respect to the Bond Funds with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of

an enterprise of a like character and with like aims. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

49.    Yet, contrary to their duties and obligations under ERISA, the Defendants failed to loyally and prudently manage the assets of the Plan in the Bond Funds managed by State Street. Specifically, State Street breached its duties to the participants, in violation of ERISA § 404(a), by, *inter alia*, (a) failing to provide complete and accurate information regarding the investments it made in the Bond Funds, and specifically, its decision to invest in highly risky and speculative securities and derivatives instead of the stable, and conservative investments as was appropriate for the Bond Funds; (b) failing to notify Plaintiffs or the Plan of State Street's change in investment strategy, (c) altering the Bond Funds' investment strategy to include investments fundamentally inconsistent with the stated purposes of the Bond Funds, (d) exposing the Bond Funds to excessive levels of risk through inappropriate leverage and accumulation of investments in mortgage-related financial derivatives, (e) failing to maintain sufficient diversification in the investments held by the Bond Funds in light of their stated objectives, and (f) generally failing to invest and manage the assets of the Bond Funds in the manner of a reasonably prudent fiduciary acting under similar circumstances.

50.    Moreover, the Defendants failed to conduct an appropriate investigation of the merits of its highly risky and speculative investment management decisions even in light of the high risk of these inappropriate investments and the particular dangers that these holdings posed to the Bond Funds. Such an investigation would have revealed to a reasonably prudent fiduciary the imprudence of mismanaging the assets of the Bond Funds in the manner alleged herein. A reasonably prudent fiduciary would have managed the assets according to their stated objective as opposed to gambling with participants' retirement savings as Defendants did in this case.

51.    As a consequence of the Defendants' breaches of fiduciary duties alleged in this Count, the Bond Funds suffered massive losses. Had Defendants discharged their fiduciary duties to prudently invest the Bond Funds' assets, the losses suffered would have been minimized or avoided. Therefore, as a direct and proximate result of the breaches of fiduciary duty alleged herein, Plaintiffs' Plan and the other Class members, lost hundreds of millions of dollars of retirement savings.

52.    Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a), 1132(a)(2) & (a)(3), the Defendants are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## LOSS CAUSATION

53.    The State Street Bond Funds suffered hundreds of millions of dollars in losses because substantial assets of the State Street Bond Funds were imprudently invested or allowed to be invested by Defendants during the Class Period, in breach of Defendants' fiduciary duties.

54.    Defendants are liable for these losses because they were caused by Defendants' breaches of fiduciary duty, including but not limited to, their imprudent decision to alter the investment strategy of the Bond Funds' and invest the Bond Funds' assets in volatile mortgage-backed instruments, engage in highly leveraged and risky transactions with Bond Fund assets, invest Bond Funds' assets in securities that are not included in the indices which State Street purportedly designed the Bond Funds to track, all of which was imprudent under the circumstances presented here.

55.    Had the Defendants properly discharged their fiduciary duties, the ERISA plans that offered the Bond Funds and for which State Street served as Investment Manager, would have avoided some or all of the losses that the plans, and, indirectly, the plan participants and beneficiaries suffered.

## REMEDY FOR BREACHES OF FIDUCIARY DUTIES

56.    The Defendants breached their fiduciary duties in that they knew, or should have known, the facts as alleged above, and therefore knew, or should have known, that the Bond Funds' assets should not have been invested in mortgage-backed instruments during the Class Period, or otherwise invested improperly as described herein.

57.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes the Secretary of Labor, or a participant, beneficiary or fiduciary of a plan to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109.  Section 409 requires "any person who is a fiduciary...who breaches any of the...duties imposed upon fiduciaries...to make good to such plan any losses to the plan...."  Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate...."

58.    With respect to calculation of the losses to the Bond Funds, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the Plans would not have made or maintained their investments in the challenged investment and, instead, prudent fiduciaries would have invested the Plan's assets prudently and appropriately, and in this instance, according to the stated objective of the Bond Funds.  In this way, the remedy restores the Plan's lost value and puts the participants in the position they would have been in if the Plan had been properly administered.

59.    Plaintiffs and the Class are therefore entitled to relief from the Defendants in the form of: (a) a monetary payment to the ERISA plans that offered the Bond Funds to make good to the ERISA plans the losses resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (b) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a), 502(a)(2) and (3), 29 U.S.C. §§

1109(a), 1132(a)(2) and (3); (c) injunctive and other appropriate equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to the extent applicable for knowing participation by a non-fiduciary in a fiduciary breach; (d) reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (e) taxable costs and interest on these amounts, as provided by law; and (6) such other legal or equitable relief as may be just and proper.

60.    Under ERISA, each Defendant is jointly and severally liable for the losses suffered in this case.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

A.    A Determination that this action is a proper class action and certifying Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure;

B.    A Declaration that the Defendants, and each of them, have breached their ERISA fiduciary duties to Plaintiffs, the Plan and the Class;

C.    A Declaration that the Defendants, and each of them, are not entitled to the protection of ERISA § 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B);

D.    An Order compelling the Defendants to make good to the ERISA plans that offered the Bond Funds for which State Street served as the Investment Manager all losses to the ERISA plans resulting from Defendants' breaches of their fiduciary duties, including losses to the plans resulting from imprudent investment of the Bond Fund's assets, and to restore to the plans all profits the Defendants made through use of the plans' assets, and to restore to the plans

all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations;

     E.     Imposition of a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the plans as the result of breaches of fiduciary duty;

     F.     An Order requiring Defendants to appoint one or more independent fiduciaries to participate in the management of the Bond Funds for ERISA plans;

     G.     Actual damages in the amount of any losses to the ERISA plans included in the Class, to be allocated among the participants' individual accounts within the plans in proportion to the accounts' losses as required by ERISA;

     H.     An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

     I.     An Order awarding attorneys' fees pursuant to the common fund doctrine, 29 U.S.C. § 1132(g), and other applicable law;

     J.     An Order for equitable restitution and other appropriate equitable and injunctive relief against the Defendants; and

     K.     Granting such other and further relief as the Court may deem just and proper.

Date:   February 4, 2008                    Respectfully submitted,


                                            **BERMAN, DEVALERIO PEASE**
                                            **TABACCO BURT & PUCILLO**

                                            By: _____
                                            Jeffrey C. Block, Esq. (JCB 0387)
                                            Patrick T. Egan, Esq.
                                            Kristen D. Tremble, Esq.
                                            One Liberty Square
                                            Boston, Massachusetts 02109
                                            Telephone: (617) 542-8300
                                            Facsimile:  (617) 542-1194


                                                - and –


                                            Anne F. O'Berry, Esq. (AO-0148)
                                            Esperante Building
                                            222 Lakeview Avenue
                                            Suite 900
                                            West Palm Beach, FL 33401
                                            Telephone: (561) 835-9400
                                            Facsimile: (561) 835-0322


                                            *Counsel for Nashua Corporation Pension Plan*
                                            *Committee, John L. Patenaude, Margaret Callan*
                                            *and Karen Adams*

TAB 1

# STATE STREET BANK AND TRUST COMPANY
## INVESTMENT FUNDS FOR TAX EXEMPT RETIREMENT PLANS

**Fourth Amended and Restated
Declaration of Trust**

WHEREAS pursuant to a Declaration of Trust, dated February 21, 1991 (the "Trust Declaration") State Street Bank and Trust Company ("the Trust Company") established the STATE STREET BANK AND TRUST COMPANY INVESTMENT FUNDS FOR TAX EXEMPT RETIREMENT PLANS which amended, restated and consolidated various declarations of trust and the commingled investment funds created thereunder;

WHEREAS pursuant to a First Amendment to Declaration of Trust dated July 19, 1991 the Trust Company amended the Trust Declaration;

WHEREAS pursuant to a Second Amended and Restated Declaration of Trust dated March 13, 1997 the Trust Company further amended the Trust Declaration;

WHEREAS, pursuant to a Third Amended and Restated Declaration of Trust dated December 22, 2003, the Trust Company further amended the Trust Declaration;

WHEREAS, the Trust Company desires to make certain additional amendments to the Trust Declaration, as so amended;

NOW THEREFORE, the Trust Company hereby amends and restates the Trust Declaration as follows:

By this Fourth Amended and Restated Declaration of Trust (the "Declaration of Trust"), there is hereby continued a previously established trust known as the "STATE STREET BANK AND TRUST COMPANY INVESTMENT FUNDS FOR TAX EXEMPT RETIREMENT PLANS". This Declaration of Trust shall govern the operation of all Funds created under the Trust Declaration and its predecessors (and any other funds established pursuant to Article III of this Declaration of Trust), each with such separate classes or divisions of interests as the Trust Company may deem necessary or desirable, in all respects. The Trust Company agrees and declares that it will hold, administer and deal with all money and property received or purchased by it as trustee hereunder upon the following terms and conditions:

## ARTICLE I - DEFINITIONS

Wherever used in this Declaration of Trust, unless the context clearly indicates otherwise, the following words shall have the following meanings:

1.1    "Affiliate" means any general partnership, limited partnership, corporation, joint venture, trust, business trust or similar organization controlling, controlled by, or under common control with the Trust Company.

1.2  "Business Day" means any day or part of a day on which the New York Stock Exchange and the Trust Company are open for business.

1.3  "Class" means (i) one of the separate classes or divisions of interests of a Fund that is established pursuant to Article III of this Declaration of Trust, or (ii) with respect to a Fund for which no such classes or divisions have been established, the Fund.

1.4  "Class Description" means a written description of a Class of a Fund as established by the Trustee and reflected in a written instrument by the Trustee.

1.5  "Code" means the Internal Revenue Code of 1986, as amended.

1.6  "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

1.7  "Existing Funds" means the Funds as of the date hereof, each of which is listed on Schedule A hereto.

1.8  "Fiscal Year" means the fiscal year of a Fund, which shall be the 12 months ending on December 31 of each year unless otherwise specified in the Fund Declaration.

1.9  "Fund" means one of the Existing Funds or one of the investment funds which is established pursuant to Article III of this Declaration of Trust after the date hereof and, in either case, refers to the investment fund to which the particular provision hereof is being applied.

1.10  "Fund Declaration" means one of the separate declarations executed by the Trustee pursuant to Section 3.1 for the purpose of establishing a Fund hereunder or for the purpose of confirming or ratifying an Existing Fund.

1.11  "Investing Fiduciary" means the person or persons, natural or legal, including a committee, who exercise discretion with respect to the decision to invest assets of a Qualified Investor in a Fund; provided, however, that, if the person who exercises investment discretion is a participant or beneficiary entitled to benefits under the Qualified Investor and is acting in his capacity as such, then Investing Fiduciary shall mean the Qualified Investor Signatory.

1.12  "Investment Company Act" means the Investment Company Act of 1940, as amended.

1.13  "Participant" means a Qualified Investor which, with the consent of the Trustee, has made a deposit in a Fund and has a beneficial interest in a Fund.

1.14  "Plan Sponsor" means the employer establishing or maintaining the Qualified Investor, if the Qualified Investor is a single employer plan (as defined in Section 3(41) of ERISA) and, in the case of any other Qualified Investor, the board of trustees or other similar group of representatives of the parties who establish or maintain the Qualified Investor.

1.15  "Qualified Investor" means an investor described in Section 2.1 of this Declaration of Trust.

1.16   "Qualified Investor Signatory" means the person or persons, natural or legal, including a committee, who executes the agreement pursuant to which the Trust Company is appointed as trustee, co-trustee, custodian, investment manager, or agent for the trustee or trustees with respect to a Qualified Investor.

1.17   "Securities Act" means the Securities Act of 1933, as amended.

1.18   "Trust Company" means State Street Bank and Trust Company.

1.19   "Trustee" means the Trust Company in its capacity as trustee under this Declaration of Trust.

1.20   "Unit" means a book-entry record used to determine the value of the beneficial interest of each Participant in a Fund or a Class of a Fund.

1.21   "Valuation Date" means the last Business Day of each calendar month, unless otherwise specified in the Fund Declaration, and such other additional days as the Trustee may from time to time designate.

<u>ARTICLE II - ELIGIBILITY FOR PARTICIPATION;</u>
<u>ACCEPTANCE OF DEPOSITS; NON-DIVERSION OF ASSETS</u>

2.1   <u>Eligibility for Participation</u>. An investor may participate in a Fund only if (1) the Trust Company is acting as trustee, co-trustee, custodian, investment manager, or agent of the investor, (2) the Trust Company, in its discretion, has accepted it as a Participant, and (3) one of the following conditions is met:

(a)   The investor is a trust created under an employees' pension or profit sharing plan (1) which is qualified within the meaning of Code Section 401(a) and is therefore exempt from tax under Code Section 501(a); and (2) which is administered under one or more documents which authorize part or all of the assets of the trust to be commingled for investment purposes with the assets of other such trusts in a collective investment trust and which adopt each such collective investment trust as a part of the plan. If such trust covers self-employed individuals within the meaning of Section 401(c)(1) of the Code (a "Keogh Plan") and interests in the Fund are not registered under the Securities Act, then each such Keogh Plan will be permitted to invest in the Fund only to the extent permitted by the Securities Act and rules and regulations promulgated thereunder.

(b)   The investor is a plan or governmental unit (1) which is described in Code Section 818(a)(6), (2) which, if interests in the Fund are not registered under the Securities Act and the Fund is not registered under the Investment Company Act, satisfies the requirements of Section 3(a)(2) or any other available exemption of the Securities Act and any applicable requirements of the Investment Company Act and rules and regulations promulgated thereunder, and (3) which is administered under one or more documents which authorize part or all of the assets of the trust to be commingled for investment purposes with the assets of other such trusts in a collective investment trust and which adopt each such collective investment trust as a part of the plan.

(c)     The investor is a segregated asset account maintained by a life insurance company (1) consisting exclusively of assets of investors described in subsections (a) and/or (b) of this Section 2.1, and (2) which is administered under one or more documents which authorize part or all of the assets of the trust to be commingled for investment purposes with the assets of other such trusts in a collective investment trust and whose constituent trusts adopt each such collective investment trust as a part of their respective plans.

(d)     If interests in the Fund are registered under the Securities Act and the Fund is registered under the Investment Company Act, the investor is (1) an individual retirement account exempt from taxation under Code Section 408(e), and (2) administered under one or more documents which authorize part or all of the assets of the trust to be commingled for investment purposes with the assets of other such trusts in a collective investment trust and which adopt each such collective investment trust as a part of the individual retirement account.

(e)     The investor is a trust (1) for the collective investment of assets of any investor otherwise described in this Section 2.1 (including without limitation a Fund created under this Declaration of Trust), which trust qualifies as a "group trust" under Internal Revenue Service Revenue Ruling 81-100, as amended, or any successor ruling, and (2) which is administered under one or more documents which authorize part or all of the assets of the trust to be commingled for investment purposes with the assets of other such trusts in a collective investment trust and which adopt each such collective investment trust as a part of the trust.

2.2     Acceptance of Deposits.  The Trustee shall accept deposits in a Fund under this Declaration of Trust only from Qualified Investors.  All deposits so accepted together with the income therefrom shall be held, managed and administered pursuant to this Declaration of Trust.

2.3     Qualification as Group Trusts.  It is intended that the Funds be exempt from taxation under Code Section 501(a) and qualify as "group trusts" under Internal Revenue Service Revenue Ruling 81-100, as amended, or any successor ruling, and other applicable Internal Revenue Service rules and regulations.  In furtherance of this intent, each investor which seeks to invest in a Fund shall represent and warrant that such investor is a Qualified Investor.

2.4     Non-Diversion of Assets.  At no time prior to the satisfaction of all liabilities with respect to the employees and their beneficiaries entitled to benefits from a Participant shall any part of the principal or income allocable hereunder to such Participant be used or diverted for or to purposes other than for the exclusive benefit of such employees or their beneficiaries except that, solely to the extent necessary to retain qualification under Section 457 of the Code, such assets shall remain subject to the claims of the general creditors of the Plan Sponsor of any Participant which is a plan within the meaning of Code Section 457.

2.5     Other Conditions of Participation.  The Trustee may establish from time to time conditions or requirements for eligibility to participate in any particular Class of a Fund by setting forth such conditions in the Class Description for such Class.

## ARTICLE III - INVESTMENT FUNDS

3.1    Establishment of Funds. The STATE STREET BANK AND TRUST COMPANY INVESTMENT FUNDS FOR TAX EXEMPT RETIREMENT PLANS shall consist of the Existing Funds that are currently maintained by the Trustee and described on Schedule A attached hereto and such additional Funds as may be established by the Trustee from time to time in accordance with this Declaration of Trust. The Trustee shall establish a Fund by executing a Fund Declaration which shall incorporate the terms of this Declaration of Trust by reference and shall specify such other terms applicable to the Fund as the Trustee shall determine. Each Fund shall constitute a separate trust and the assets of each Fund shall be separately held, managed, administered, valued, invested, reinvested, distributed, accounted for and otherwise dealt with as a separate trust hereunder.

3.2    Establishment of Classes. The Trustee, in its sole discretion, may divide a Fund into one or more Classes of Units representing beneficial interests in such Fund, each with its own fee and expense obligations and assessments. The Trustee shall establish each such Class by establishing a Class Description that shall specify the rate or amount of, or formula for, Trustee compensation, to the extent applicable, and the rate, amount description or type of fees, expenses, costs, charges and other liabilities specially allocable to, or assessed against, such Class of Units, as well as any conditions to, or requirements for, participation in such Class. The fact that a Fund shall have been established and designated without any specific establishment or designation of Classes, or that a Fund shall have more than one established and designated Class, shall not limit the authority of the Trustee, in its sole discretion and at any time, to subsequently establish and designate separate Classes, or one or more additional Classes, of such Fund. If no Classes are designated for a Fund, then all Units of such Fund shall be deemed to be of the same Class for purposes of this Agreement. The Trustee shall not amend a Class Description of a Fund without providing each Investing Fiduciary participating in such Class or, if such Investing Fiduciary is the Trust Company, the Qualified Investor Signatory, with written notice and a description of the amended Class Description at least 30 days prior to the Valuation Date on or immediately preceding the effective date of such amendment. Nothing herein shall require the Trustee to give the Class Description or notice of an amendment to a Class Description to any Investing Fiduciaries or Qualified Investor Signatories who are not participating in such Class.

3.3    Dealings with the Funds. All persons extending credit to, contracting with, or having any claim of any type against any Fund (including, without limitation, contract, tort and statutory claims) shall look only to the assets of such Fund for payment under such credit, contract or claim. No Participant, nor any beneficiary, trustee, employee or agent thereof, nor the Trustee, nor any of its officers, directors, shareholders, partners, employees or agents shall be personally liable for any obligation of any Fund. Every note, bond, contract, instrument, certificate, or undertaking and every other act or thing whatsoever executed or done by or on behalf of any Fund shall be conclusively deemed to have been executed or done only by or for such Fund, and no Fund shall be answerable for any obligation assumed or liability incurred by another Fund established hereunder.

3.4    Management of the Funds. The Funds shall be under the exclusive management and control of the Trustee in conformity with the provisions of this Declaration of Trust. The

Trustee, from time to time, may invest and reinvest assets of the Fund in investments which are permissible investments for employee pension benefit plans under the laws of the United States, subject, however, to the following restrictions and provisions:

(a)    Assets of each Fund which the Trustee may maintain or establish hereunder shall be invested and reinvested in accordance with such investment objectives, guidelines and restrictions as the Trustee may specify in the Fund Declaration of such Fund. The Trustee shall not invest the assets of any Qualified Investor in a Fund until the Trustee has provided a copy of the relevant Fund Declaration and Class Description to the Investing Fiduciary or, if such Investing Fiduciary is the Trust Company, to the Qualified Investment Signatory. The Trustee shall not amend the Fund Declaration of any Fund without providing each Investing Fiduciary or, if such Investing Fiduciary is the Trust Company, the Qualified Investor Signatory, with written notice and a description of the amended Fund Declaration at least 30 days prior to the Valuation Date on or immediately preceding the effective date of such amendment.

(b)    Notwithstanding anything to the contrary elsewhere herein provided, the Trustee is specifically authorized to establish one or more short-term investment funds (each such Fund when referred to specifically herein is sometimes referred to as a "STIF") provided that a STIF shall be subject to the following provisions:

(i)    The STIF may be invested in bonds, notes, commercial paper, certificates of deposit, repurchase agreements or other evidences of indebtedness (including variable rate notes) with effective maturity dates (or rights to exercise the put or sale of such investments) not exceeding 397 days from their date of settlement after purchase by the Trustee and/or registered investment companies which invest primarily in money market instruments ("Money Market Mutual Funds"), including registered investment companies sponsored or managed by the Trust Company or its Affiliates; and

(ii)    Principal of the STIF shall be valued at the close of business of each Valuation Date at original cost adjusted for amortization of premiums and accretion of discounts.

(c)    Notwithstanding the investment objectives, restrictions and guidelines set forth in the relevant Fund Declaration, the assets of any Fund may be invested in obligations of the United States Government, commercial paper, certificates of deposit, savings and money market deposit accounts (including deposits bearing a reasonable rate of interest in the Trust Company or any of its Affiliates), Money Market Mutual Funds (including those sponsored or managed by the Trust Company or any of its Affiliates), or any other short-term fixed income investments (including without limitation any commingled short-term investment fund maintained by the Trust Company or any of its Affiliates for the collective investment of the assets of Qualified Investors whether such short-term investment fund is established and maintained pursuant to this Declaration of Trust or any other instrument).

(d)    The decision of the Trustee as to whether an investment is of a type which may be purchased for a Fund under the relevant Fund Declaration and this Declaration of Trust shall be conclusive.

(e)    Pending the selection and purchase of suitable investments, or the payment of expenses or other anticipated distributions, the Trustee may retain in cash, without liability for interest, such portion of the Fund as it shall deem reasonable under the circumstances.

(f)    The Trustee may use one or more computer programs which it believes will assist it in achieving the investment objectives of the Fund or in complying with the guidelines and restrictions applicable to the Fund.

ARTICLE IV - UNITS OF PARTICIPATION

4.1    Recording of Beneficial Interests.  The beneficial interest of each Participant in a Fund shall be represented by Units, which will be designated on a Class-by-Class basis.  With respect to a Class of Units of a Fund, each Unit shall be of equal value to every other Unit of the same Class.  Each Unit of a Class shall represent an undivided proportionate interest in all assets and liabilities of the Fund attributable to that Class, and all income, profits, and losses, as well as expenses, costs, charges, and other liabilities specifically allocable to, or assessed against, such Class shall be allocated to all Units of the same Class equally.  No certificates of such Units shall be issued, but the Trustee shall keep books in which shall be recorded the number of Units standing to the credit of each Participant.  The Trustee may from time to time divide the Units of any Class of the Fund into a greater number of Units of lesser value or decrease the number of Units of any Class of the Fund into a lesser number of Units of greater value provided that the proportionate interest of each Participant in such Class of the Fund shall not thereby be changed.

4.2    Apportionment of Income, Profits and Losses.  Profits and losses of a Fund shall be credited or charged to the Fund; provided that, as described in Section 4.3 below, any expenses, costs, charges, or other liabilities specifically incurred or accrued by a Fund and attributable to a Class in accordance with the Class Description for such Class shall be allocated to such Class and all other fees, expenses, costs, charges, or other liabilities not specifically allocated to a Class shall be allocated to the Fund.  Except as herein provided, all income earned by a Fund after expenses shall be added to the principal of the Fund and invested and reinvested as a part thereof.  The Trustee in its sole discretion may make pro rata distributions of the net income attributable to a Class of the Fund to each Participant of the Class.  Notwithstanding the foregoing, (a) in the case of a STIF, as of the close of business on each Valuation Date, all net income (as determined by the Trustee in accordance with uniform rules which are intended to preserve the Unit value of each Class of the STIF at $1.00 or such other constant amount as the Trustee may specify to the Participants of each Class of the STIF from time to time) attributable to a Class of the STIF shall be allocated among the Participants of such Class in proportion to the number of Units of each Participant in such Class and shall be reinvested on behalf of each such Participant in additional Units of such Class, and (b) if the Fund Declaration provides that the Fund's Unit Value shall be held constant to the extent feasible (a "Constant Value Fund"), then as of the close of business on each Valuation Date an amount equal to the sum of all net income, realized gains and losses, and unrealized appreciation and depreciation (determined in accordance with this Article IV) attributable to a Class of the Constant Value Fund shall be allocated among the Participants of such Class in proportion to the number of Units of each Participant in such Class and shall be reinvested on behalf of each such Participant in additional

Units of such Class; provided, however, that such amount, if positive, may be distributed in cash to a Participant, if the Participant so elects.

4.3    Valuation of Units.  At the inception of a Fund, the value of each Unit of each Class of the Fund shall be deemed to be one dollar ($1.00) or such other amount as the Trustee shall specify in the Fund Declaration for such Fund, and thereafter, the value of each Unit of each Class shall be determined in accordance with the following provisions of this Section 4.3, except as otherwise provided elsewhere in this Declaration of Trust in the case of a STIF or a Constant Value Fund.  As of the close of business on each Valuation Date, the Trustee shall determine, in accordance with the valuation rules of Section 4.4, the then fair value of the assets of the Fund (the "Total Value of the Fund").  The Trustee shall then subtract from the Total Value of the Fund any fees, expenses, charges and other liabilities incurred or accrued by the Fund and not specifically allocated to, or assessed against, a particular Class of the Fund, and the resulting value shall be the "Net Value of the Fund."  The Trustee shall allocate the Net Value of the Fund among the Fund's Classes in proportion to their respective Class Percentages as of such date (as defined below) (for each Class, such amount is the "Total Class Value").  The Trustee shall then, with respect to each Class, subtract from the Total Class Value of such Class any fees, expenses, costs, charges or other liabilities specifically incurred or accrued by the Fund and attributable to such Class in accordance with the Class Description for such Class, and the resulting value shall be the "Net Class Value."  The value of a Unit of a particular Class shall be calculated by dividing the Net Class Value of such Class by the number of outstanding Units of such Class.

Each valuation shall be completed within such period following each Valuation Date as may be specified by applicable law or regulation and if no such date is so specified, each valuation shall be made within ten Business Days following each Valuation Date; provided, however, that if the Trustee cannot reasonably complete such valuation within the ten-day period it shall complete such valuation as soon as reasonably possible thereafter.  As used in this Section 4.3, a Fund Class's "Class Percentage" on any date is equal to (i) the aggregate fair value of the assets of the Fund attributable to such Class on such date (determined in accordance with the same principles used to determine the Total Value of the Fund), divided by (ii) the Total Value of the Fund on such date; provided that both the numerator and the denominator shall be determined before taking into account any fees, expenses, costs, charges or other liabilities allocable to the Fund (but not a Class) and any fees, expenses, costs, charges, or other liabilities specifically incurred or accrued by the Fund and attributable to a Class in accordance with the Class Description for such Class and not previously reflected in such Class's Net Class Value.

4.4    Valuation Rules.  Except as otherwise provided elsewhere in this Declaration of Trust in the case of a STIF, or as may be more specifically set forth in the Fund Declaration, the assets of the Fund shall be valued by the Trustee at fair value, in accordance with generally accepted valuation principles consistently followed and uniformly applied.  At the discretion of the Trustee, certain securities and investments shall be stated at fair value on the basis of valuations furnished by a pricing service, approved by the Trustee, which determines valuations for such securities using methods based on market transactions for comparable securities and various relationships between securities which are generally recognized by institutional traders. The Trustee may conclusively rely upon any regularly published reports of sale prices, bid

prices, and over-the-counter quotations for the values of any listed or unlisted securities or futures contracts. The reasonable and equitable decision of the Trustee regarding whether a method of valuation fairly indicates fair value, and the selection of a pricing service, shall be conclusive and binding upon all persons.

4.5    Suspension of Valuations and Withdrawal Rights. Notwithstanding anything to the contrary elsewhere in this Agreement, the Trustee, in its sole discretion, may suspend the valuation of the assets or Units of any Fund pursuant to this Article IV and/or the right to make withdrawals from such Fund in accordance with Article V for the whole or any part of any period when (i) any market or stock exchange on which a significant portion of the investments of such Fund are quoted is closed (other than for ordinary holidays) or during which dealings therein are restricted or suspended; (ii) there exists any state of affairs which, in the opinion of the Trustee, constitutes an emergency as a result of which disposition of the assets of such Fund would not be reasonably practicable or would be seriously prejudicial to the Participants therein; (iii) there has been a breakdown in the means of communication normally employed in determining the price or value of any of the investments of such Fund, or of current prices on any stock exchange on which a significant portion of the investments of such Fund are quoted, or when for any reason the prices or values of any investments owned by such Fund cannot reasonably be promptly and accurately ascertained; or (iv) the transfer of funds involved in the realization or acquisition of any investment cannot, in the opinion of the Trustee, be effected at normal rates of exchange.

## ARTICLE V - DEPOSITS AND WITHDRAWALS

5.1    Deposits. With the consent of the Trustee and upon such prior notice as the Trustee may specify from time to time to the Qualified Investors, a Qualified Investment may, as of any Valuation Date (or, in the case of a STIF, as of such Valuation Dates as the Trustee may designate from time to time), deposit assets in such proportions among the Funds as the Investing Fiduciary of such Qualified Investor shall instruct. The Trustee shall be fully protected in following the instructions of the Investing Fiduciary as to the amounts and proportions of the assets of any deposit to be placed in each of the Funds. If, with the consent of the Trustee, assets that are to be deposited in a Fund other than the STIF are received by the Trustee prior to a Valuation Date, the Trustee may, in its sole discretion, invest such assets in such other Fund or Funds (including, without limitation, any STIF) as the Trustee deems appropriate until the next Valuation Date following receipt of such assets. Only money and such other assets as are permissible investments for the Fund, and acceptable to the Trustee, may be deposited in such Fund. Assets other than money deposited in a Fund shall be valued at their fair value (as determined under Section 4.4) as of the close of business on the Valuation Date on which the deposit is made. The Trustee shall credit to the account of such Participant which makes a deposit in the Fund that number of Units of a Class which the deposit will purchase at the then value of each such Unit. All deposits to a Fund shall be deemed to have been made as of the close of business on the relevant Valuation Date.

5.2    Withdrawals. Subject to Section 4.5 of this Declaration of Trust, the Investing Fiduciary of a Participant may, as of the close of business on any Valuation Date (or, in the case of a STIF, as of the close of business on such Valuation Dates as the Trustee may designate from

time to time), withdraw any number of Units from the Fund provided that such right of withdrawal may be further limited in the Fund Declaration applicable to such Fund. Notice of withdrawal must be received by the Trustee no later than 15 days prior to such Valuation Date or within such other prior notice period as the Trustee may establish in the Fund Declaration, but the Trustee may waive this requirement in any case.

    5.3    <u>Distributions Upon Withdrawal</u>. Upon the withdrawal of Units from a Fund, the Trustee shall distribute to the Participant making such withdrawal a sum arrived at by multiplying the number of Units withdrawn by the value of each Unit as of the close of business on the relevant Valuation Date. The sum shall be distributed in cash or in kind or partly in cash and partly in kind, in any manner consistent with applicable Massachusetts law, as the Trustee in its sole discretion shall determine. The value of any asset other than cash which is transferred shall be deemed to be the value thereof (as determined under Section 4.4) as of the close of business on the Valuation Date on which the withdrawal is made. Such distribution shall be effected within a reasonable time following the applicable Valuation Date except that such distribution may be delayed if the Trustee determines that it cannot reasonably make such distribution on account of any order, directive or other interference by an official or agency of any government or any other cause reasonably beyond its control including, but not limited to, illiquid markets or illiquid securities. The Participant receiving such distribution shall not be entitled to any interest or income earned on such monies pending distribution.

    5.4    <u>Distribution Upon Disqualification</u>. Notwithstanding any provision herein to the contrary, if the Trustee receives notice that a Participant has ceased to be a Qualified Investor (as defined in Section 1.13), then all Units allocated to such Participant shall be withdrawn from the Fund as of the close of business on the first Valuation Date which is more than 15 days (or such other period as the Trustee determines to be reasonable) after the date the Trustee receives such notice and distribution shall be made in accordance with Section 5.3 as soon as reasonably possible.

    5.5    <u>Title To Assets</u>. All of the assets of each Fund shall at all times be considered as vested in the Trustee in a fiduciary capacity. No Participant shall be deemed to have severable ownership in any individual asset in any Fund or any right of participation or possession thereof. Except as otherwise specifically provided herein, each Participant shall have a proportionate, undivided, beneficial interest in each Fund in which such Participant participates and shall share ratably in the income, profits and losses thereof with the other Participants participating in such Fund.

    5.6    <u>Expenses Chargeable to the Participant</u>. Notwithstanding any provision of this Declaration of Trust to the contrary, brokerage fees and other expenses (including, but not limited to, settlement, stamp taxes, duty, stock listing and related expenses) incurred in connection with the purchase or sale of securities relating to or arising out of the deposit of assets in a Fund or the withdrawal of assets from a Fund by a Participant may, in the Trustee's discretion, be charged to such Participant. Such charge may be effected either by a corresponding adjustment in the number of Units of such Fund credited to such Participant or by a direct assessment against such Participant.

For purposes of clarity, such expenses may also include intra-day market gain or loss attributable in the determination of the Trustee to the purchase or sale of securities by the fund in connection with Participant contributions or withdrawals, and may be aggregated across contributing or withdrawing Participants, as the case may be, on a weighted average basis as determined by the Trustee for any given trading period.

## ARTICLE VI - RIGHTS AND DUTIES OF TRUSTEE

6.1    Powers of the Trustee.  In exercising its exclusive right to manage and control the Funds created hereby, the Trustee shall have the following rights and powers which are in addition to any other powers or rights conferred by law or by other Articles of this Declaration of Trust or by a Fund Declaration:

(a)    to hold, manage, and control all property at any time forming part of a Fund and, consistently with the investment objectives, restrictions and guidelines set forth in the relevant Fund Declaration, to invest and reinvest any or all of the assets of a Fund in any property, real, personal or mixed, wherever situated, and whether or not productive of income or consisting of wasting assets, including, without limitation, common and preferred stocks; bonds; notes; debentures; foreign securities; commodities; futures contracts and options thereon of any type; stock options and option contracts of any type, whether or not traded on any exchange; contracts for the immediate or future delivery of financial instruments and other property; direct or indirect investments in real property through fee ownership, leases, loans secured by primary or subordinated liens or mortgages on real property (including, without limitation, any collective or part interest in any bond and mortgage or note and mortgage), or stock or other securities of corporations, partnerships or other entities holding or investing in real property, including mortgage-backed securities, or other assets, including asset-backed securities; certificates of deposit, demand or time deposits (including deposits bearing a reasonable rate of interest in the Trust Company or any of its Affiliates); bills; certificates; acceptances; repurchase agreements; commercial paper; variable rate or master notes; interests in trusts; limited partnership interests; interests in or shares of mutual funds or other investment companies (whether or not incorporated and whether or not registered under the Investment Company Act of 1940, as amended, including any such mutual funds or investment companies managed or sponsored by the Trust Company or any of its Affiliates); interests in collective investment trusts which are exempt from tax under applicable Internal Revenue Service rulings and regulations (including, without limitation, any collective investment trust maintained by the Trust Company or any of its Affiliates for the collective investment of the assets of Qualified Investors whether such collective investment trust is established and maintained pursuant to this Declaration of Trust or any other instrument), and, while the assets of any Fund are so invested, such collective investment trusts shall constitute a part of this Declaration of Trust with respect to such Fund; foreign currencies; contracts for the immediate or future delivery of foreign currencies; insurance policies and contracts; annuity contracts; oil, mineral or gas properties, royalties, interests or rights (including equipment pertaining thereto); gems, works of art, gold, bullion and coin; evidences of indebtedness or ownership in foreign corporations or other enterprises; indebtedness of foreign governments, foreign agencies or international organizations; patents, copyrights, trade secrets, licenses, or royalties; or any other property of any kind, real or personal, tangible or intangible, as the Trustee may deem advisable; without being limited to

classes of property in which trustees are authorized to invest trust funds by any law, or any rule of court, of any state and without regard to the proportion any such property or interest may bear to the entire amount of the STATE STREET BANK AND TRUST COMPANY INVESTMENT FUNDS FOR TAX EXEMPT RETIREMENT PLANS or of any Fund;

(b)     to retain any property, real or personal, tangible or intangible, at any time received by it;

(c)     to sell, convey, transfer, exchange, pledge, grant options on or otherwise dispose of the property of the Fund from time to time in such manner, for such consideration and upon such terms and conditions as the Trustee, in its discretion, shall determine;

(d)     to employ such brokers, agents, consultants, custodians (including foreign custodians), depositories, advisers, and legal counsel as may be reasonably necessary or desirable in the Trustee's judgment in managing and protecting a Fund including, but not limited to, Affiliates and, subject to applicable law, to pay their reasonable expenses and compensation out of the Fund;

(e)     to settle, compromise, abandon or submit to arbitration all claims and demands in favor of or against a Fund and to establish reserves in connection therewith; to commence or defend suits or legal proceedings whenever, in its judgment, any interest of a Fund requires it; and to represent a Fund in all suits or legal proceedings in any court or before any other body or tribunal;

(f)     to borrow money, with or without security, for a Fund; to encumber property of a Fund by mortgages or deeds of trust to secure repayment of indebtedness; to assume existing mortgages or deeds of trust on properties acquired by a Fund; and to acquire properties subject to existing mortgages or deeds of trust, all subject to Section 3.3;

(g)     except as may be provided otherwise in the Fund Declaration, to vote any security forming part of a Fund either in person or by proxy for any purpose; to exercise any conversion privilege or subscription right given to the Trustee as the owner of any security forming part of a Fund; to consent to take any action in connection with, and receive and retain any securities resulting from, any reorganization, consolidation, merger, readjustment of the financial structure, sale, lease or other disposition of the assets of any corporation or other organization, the securities of which may constitute a portion of a Fund;

(h)     to cause any securities or other property which may at any time form a part of a Fund to be issued, held or registered in the individual name of the Trustee, or in the name of its nominee or agent (including any custodian employed by the Trustee, any nominee of such a custodian, and any depository, clearing corporation or other similar system), or in such form that title will pass by delivery;

(i)     to enter into stand-by agreements for future investment either with or without a stand-by fee;

(j)　　to lend any securities and to secure the same in any manner, and during the term of such loan to permit the securities so lent to be transferred in the name of and voted by the borrower, or others, provided that in lending securities of a Fund the Trustee shall comply with ERISA Prohibited Transaction Class Exemptions 81-6 and 82-63 to the extent applicable;

(k)　　to collect and receive any and all money and other property due to any Fund and to give full discharge thereof;

(l)　　to maintain the indicia of ownership of assets outside the United States to the extent permitted by applicable Federal regulations;

(m)　　to organize corporations or partnerships or trusts for the purpose of acquiring and holding title to any property which the Trustee is authorized to acquire under subparagraph (a) of this Paragraph 6.1;

(n)　　to manage, improve, repair, mortgage, lease for any term and control all property, real or personal, at any time forming part of the Fund upon such terms and conditions as the Trustee, in its discretion, shall determine;

(o)　　to enter into custodian and sub-custodian agreements with one or more banks located outside the United States to the extent permitted by ERISA pursuant to which such foreign banks will, in addition to acting as custodian, provide brokerage services with respect to Fund assets held in custody, but only if the Trustee has determined that the total compensation paid to such foreign bank is reasonable in light of all the services being rendered;

(p)　　to convert any monies into any currency through foreign exchange transactions to the extent permitted under ERISA;

(q)　　on behalf of each of the Participants, to delegate responsibility for the management of all or any of the assets of the Funds to one or more investment managers (as such term is defined in Section 3(38) of the Employee Retirement Income Security Act of 1974, as amended).

(r)　　to do all other acts in its judgment necessary or desirable for the proper administration of a Fund or with respect to the investment, disposition or liquidation of any assets of a Fund, although the power to do such acts is not specifically set forth herein.

6.2　　Records and Accounts. The Trustee shall keep full records and books of account. The Trustee's accounts shall be kept on an accrual basis. Annually, within a reasonable period after the close of each Fund's Fiscal Year, the Trustee shall furnish a written account of the operation of the Fund for the preceding Fiscal Year to the Investing Fiduciary of each Participant having an interest in such Fund during the Fiscal Year, or, if such Investing Fiduciary is the Trust Company, to the Qualified Investor Signatory. Any person to whom an account of the Trustee is furnished may approve such account by an instrument in writing delivered to the Trustee. If objections to specific items in such account are filed with the Trustee within 60 days after the account has been furnished and the Trustee believes such objections to be valid, the Trustee may adjust the account in such manner as it deems equitable under the circumstances.

Each person to whom the Trustee furnishes an account shall be notified by the Trustee of any adjustments so made. If

(a)    all persons to whom such account of the Trustee is furnished approve such account, or

(b)    no objections to specific items in such account are filed with the Trustee within sixty (60) days after the account has been furnished, or

(c)    the Trustee shall give notice of an adjustment of the account and legal proceedings are not commenced against the Trustee within 60 days after notice of such adjustment has been furnished,

then the account of the Trustee, with respect to all matters contained therein (as originally furnished if no adjustment was made, or as adjusted if an adjustment was made), shall be deemed to have been approved with the same effect as though judicially approved by a court of competent jurisdiction in a proceeding in which all persons interested were made parties and were properly represented before such court. The Trustee hereunder, nevertheless, shall have the right to have its accounts settled by judicial proceeding if it so elects, in which case the only necessary parties shall be the Trustee hereunder and each person to whom the Trustee furnishes an account.

6.3    Audits and Reports. The Trustee shall at least once each year cause an independent certified public accountant to audit each Fund. The reasonable expense of such audit shall be charged to the Fund. A copy of the report of such audit shall be furnished, or a notice given that a copy of such report is available and will be furnished without charge upon request, to each person entitled to receive a copy of the annual account of the Trustee hereunder. The cost of distribution of the report shall be borne by the Trustee.

6.4    Governmental Filings. The Trustee shall make direct filings on behalf of the Participants with the Department of Labor of the information described in 29 C.F.R. Section 2520.103-12.

6.5    Expenses and Fees. The Trustee may pay all reasonable expenses of the Fund (or any Class thereof) (including counsel fees and expenses of litigation) that may be lawfully charged to the Fund (or such Class) under applicable laws and regulations. The Trustee shall be entitled to receive a reasonable fee for its services as Trustee and, if the Fund Declaration and/or Class Description applicable to the Fund so provides and to the extent not inconsistent with Section 406(b) or any other provision of ERISA, for its services as custodian with respect to a Fund. The amount of such fees or the basis on which such fees shall be determined and charged may be (i) established in the Fund Declaration and/or Class Description applicable to the Fund, as amended from time to time, (ii) established in such schedules as the Trustee may furnish to the affected Participants from time to time, or (iii) negotiated separately with each Participant in the Fund. Such fees may be charged against the Fund (as long as the fees charged against the Fund are uniform for all Participants) or against a Class of the Fund (as long as the fees charged against the Class are uniform for all Participants in that particular Class) or may be paid directly by the individual Participants or Plan Sponsors. If the fees are to be charged to each Participant

separately, the Trustee may, in its discretion, charge the fees against the interest of a Participant in the Fund by redemption of such Participant's Units. The expenses incurred in connection with a deposit of assets in a Fund or a withdrawal of assets from a Fund by a Participant may be charged to such Participant pursuant to the provisions of Section 5.6.

6.6     Mailing of Notices, Accounts and Reports. Notices, accountings and reports required to be given or furnished by the Trustee may be given or furnished by actual delivery, or by mailing by first class mail, postage prepaid, to the most recent address known, to the person or persons entitled to receive such notice, accounting or report. The date of such actual delivery or of such mailing, as the case may be, for all purposes hereunder, shall be deemed to be the date as of which such notice, accounting or report was given in the case of actual delivery or the date upon which such mailing was made.

6.7     Reliance on Authority of Trustee. Persons dealing with the Trustee shall be under no obligation to see to the proper application of any money paid or property delivered to the Trustee or to acquire into the Trustee's authority as to any transaction.

6.8     Reliance on Experts and Others. The Trustee shall, in the performance of its duties, be fully protected by relying in good faith upon the books of account or other records of the Trust, or upon reports made to the Trustee by (a) any of the officers or employees of the Trust, (b) the custodians, depositories, any valuation committee or agents, pricing agents, or transfer agents of the Trust, or (c) any accountants, attorneys, or appraisers or other agents, experts or consultants selected with reasonable care by the Trustee. The Trustee, officers, employees, and agents of the Trust may take advice of counsel with respect to the meaning and operation of this Declaration of Trust or any Fund Declarations or Class Description applicable to a Fund, and shall be under no liability for any act or omission in accordance with such advice or for failing to follow such advice. The exercise by the Trustee of its powers and discretion hereunder and the construction in good faith by the Trustee of the meaning or effect of any provisions of this Declaration of Trust or a Plan applicable to a Fund shall be binding upon everyone interested.

6.9     Limitation on Liability. Except as otherwise provided by applicable law, (i) the Trustee shall not be liable by reason of the purchase, retention, sale, or exchange of any investment, or for any loss in connection therewith, except to the extent such loss shall have been caused by its own negligence, willful misconduct, or lack of good faith, and (ii) the Trustee shall not be liable for any mistake made in good faith in the administration of the Fund if, promptly after discovering the mistake, the Trustee takes whatever action the Trustee, in its sole discretion, may deem to be advisable under the circumstances to remedy the mistake.

## ARTICLE VII - AMENDMENT; TERMINATION; MERGER

7.1     Amendment. This Declaration of Trust may be amended from time to time by the Trust Company. Such an amendment may be retroactive and, in any event, shall become effective on the date specified by the Trust Company; provided that no amendment may either directly or indirectly operate to deprive any Participant of its beneficial interest in any Fund as it is then constituted. Notice of such amendment shall be sent to each person entitled to receive a copy of the Trustee's annual account for such Fund. A Fund Declaration may be amended from

time to time by the Trust Company as provided in Section 3.4(a) of this Declaration of Trust. A Class Description may be amended from time to time by the Trust Company as provided in Section 3.2 of this Declaration of Trust.

7.2    Termination. Subject to the terms of the Fund Declaration applicable to a Fund, the Trustee may, on any Valuation Date, without advance notice to any person, terminate a Fund, and thereupon the value of each Unit in such Fund shall be determined and there shall be distributed to each Participant in cash or in kind or partly in cash and partly in kind a sum arrived at by multiplying the number of Units in the account of each Participant by the value of each Unit at the close of business on such Valuation Date all as provided in Section 5.3.

7.3    Merger

(a)    From time to time, the Trust Company in its discretion may merge any two or more of the Funds (or any two or more Classes of a Fund) now or hereafter established or maintained pursuant to this Declaration of Trust in whole or in part, in such manner and under such terms and conditions as the Trust Company in its discretion may determine. Any such merger shall be consistent with this Article VII and shall become effective only as of a Valuation Date. Such merger shall thereupon be binding upon every Participant of the Funds (or Classes) which are merged and upon every fiduciary thereof and upon every person beneficially interested therein. Notice of any proposed merger shall be sent to each Investing Fiduciary (or if the Investing Fiduciary is the Trustee, to the Qualified Investor Signatory) of the Participants in the Funds (or Classes) being merged at least thirty days prior to the effective dates of such merger.

(b)    As of the effective date of any merger authorized by subsection (a), the assets of each of the Funds (or Classes) involved shall be valued in accordance with Section 4.4 of this Declaration of Trust, and the value of the Units of each merging Fund (or Class) shall be determined. Thereupon all the combined assets of all Funds (or Classes) involved in the merger shall be divided by the Trustee into such number of equal Units of the Fund (or Class) created by the merger (the "Merged Fund" (or the "Merged Class," as the case may be)) as the Trustee shall determine. There then shall be allocated to each Participant in the Funds (or Classes) being merged such number of Units of the Merged Fund (or the Merged Class) as will have a total net value equal to the value of the aggregate Units held by each Participant in one or the other or both of the respective Funds (or Classes) prior to the Merger. The value of the beneficial interest of each Participant in the Merged Fund (or the Merged Class) shall be equal to the aggregate value of such Participant's beneficial interest(s) in the separate Funds (or Classes) involved in such merger immediately prior to the merger.

## ARTICLE VIII - LIQUIDATING ACCOUNTS

8.1    Establishment of Liquidating Accounts. The Trustee may from time to time in its discretion transfer any investment of a Fund to a liquidating account or accounts. Each liquidating account shall be maintained and administered solely for the ratable benefit of the Participants interested in the Fund at the time such account is established. The primary purpose of liquidating accounts shall be to provide a method of liquidation of the assets contained

therein, but the period during which the Trustee may continue to hold any such assets shall rest in its discretion.

8.2     Powers and Duties of Trustee.  The Trustee shall have, in addition to all of the powers granted to it by law and by the terms of this Declaration of Trust, each and every discretionary power of management of the assets contained in a liquidating account and of all proceeds of such assets which the Trustee shall deem necessary or convenient to accomplish the liquidation of such assets.  At the time of the establishment of a liquidating account, the Trustee shall prepare a schedule showing the interest of each Participant therein.  When the assets of such liquidating account shall have been completely distributed, such schedule shall be thereafter held as part of the permanent records of the Fund to which the liquidating account relates.  The Trustee shall include in any report of audit for a Fund, a report for each liquidating account established in connection with such Fund.

8.3     Limitation on Investment of Further Money.  No further money shall be invested in any liquidating account except that the Trustee shall have the power and authority, if in the Trustee's opinion such action is advisable for the protection of any asset held therein, to borrow money from others to be secured by the assets held in such liquidating account and to give and renew such note or notes therefor as the Trustee may determine.

8.4     Distributions.  The Trustee may make distributions from a liquidating account in cash or in kind or partly in cash and partly in kind, and, except as otherwise provided in the Fund Declaration for the Fund to which such liquidating account relates, the time and manner of making all such distributions shall rest in the sole discretion of the Trustee; provided that all such distributions as of any one time shall be made in a manner consistent with applicable Massachusetts law.

8.5     Effect of Establishing Liquidating Accounts.  After an asset of a Fund has been set apart in a liquidating account, it shall be subject to the provisions of this Article VIII, but such asset shall also be subject to all other provisions of this Declaration of Trust so far as the same shall be applicable thereto and not inconsistent with the provisions of this Article VIII.  For the purpose of deposits to and withdrawals from a Fund, the value of any investment transferred therefrom to a liquidating account shall be excluded.

## ARTICLE IX - MISCELLANEOUS

9.1     Spendthrift Provision.  The beneficial interests of the Participants in a Fund shall not be assignable or subject to attachment or receivership nor shall such interests pass to any trustee in bankruptcy or be reached or applied by any legal process for the payment of any obligation of any Participant except as otherwise required to retain qualification under Code Section 457 in the case of a Participant which is a plan within the meaning of Code Section 457.

9.2     CFTC Matters.  The Trustee is exempt from registration with the Commodity Futures Trading Commission ("CFTC") and the National Futures Association ("NFA") as a commodity pool operator in connection with the Trustee's operation of each Fund pursuant to an exemption with respect to operation of a "qualifying entity" by a trust company subject to regulation by a state, as set forth in Rule 4.5(a)(3) under the Commodity Exchange Act (the

"CEA"). Unlike a registered commodity pool operator, the Trustee is not subject to regulation by the CFTC and NFA and is not required to deliver a disclosure document prepared in accordance with Rules 4.24 and 4.25 under the CEA or a certified annual report to participants in a Fund and the participants in a Fund are not subject to the protective provisions afforded under the CEA.

9.3     Judicial Proceedings Involving Funds.  The Trustee shall be deemed to represent all persons, natural or legal, having an interest in a Fund for the purposes of all judicial proceedings affecting the Fund or any asset thereof, and only the Trustee need be made a party to any such action.

9.4     Successors and Assigns.  In the event that the Trust Company shall at any time merge or consolidate with, or shall sell or transfer substantially all of its assets to, another trust company or corporation, state or federal, the trust company or corporation resulting from such merger or consolidation or the trust company or corporation into which it is converted, or to which such sale or transfer shall be made, shall thereupon become and be substituted hereunder in the place of the Trust Company and shall become the Trustee hereunder with the same effect as though originally so named.

9.5     Controlling Law.  The powers and duties of the Trustee and all questions of interpretation of this Declaration of Trust shall be governed by ERISA, as amended, and to the extent permitted by such law, by the laws of the Commonwealth of Massachusetts. The Trust established by this Declaration of Trust is organized in the United States and will be maintained at all times as a domestic trust in the United States.

9.6     Effective Dates.  This Fourth Amended and Restated Declaration of Trust shall be effective as of October 1, 2005.

IN WITNESS WHEREOF, STATE STREET BANK AND TRUST COMPANY has caused its name to be hereunto signed by its proper officer as of the _____15th_____ day of August, 2005.

ATTEST

STATE STREET BANK AND TRUST COMPANY

Name: Christopher W. Thome
Title:  Principal and Counsel

By: _____
Name:  Timothy Connolly
Title:   Senior Principal

COMMONWEALTH OF MASSACHUSETTS ) 
                                    ) SS.
COUNT OF SUFFOLK                        )

      On this _____15th_____ day of August, 2005, before me personally came _Christopher Thome_ and _Timothy Connelly_, to me personally known, who being by me duly sworn did depose and say that they reside in _Stoughton_____, Massachusetts and _Marshfield_____, Massachusetts, respectively; that they are the _Principal and Senior_ and _Senior Principal_____, respectively, of STATE STREET BANK AND TRUST COMPANY, the Trust Company described in and which executed the foregoing instrument; that they know the seal of said Trust Company; that the seal was affixed by the authority of the Board of Directors of said Trust Company; and that they signed their names thereto by like authority; and the said _Christopher Thome_____ and _Timothy Connelley____ severally acknowledged said instrument to be their free act and deed and the free act and deed of said Trust Company.

      IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal at the City of Boston, in the County of Suffolk and Commonwealth of Massachusetts, on the day and year above appearing.

                                          *Kelly A. Broderick*
                                      Notary Public: Kelly A. Broderick
                                       My commission expires: June 11, 2010

SCHEDULE A

Declaration of Trust
State Street Bank and Trust Company
Investment Funds for Tax Exempt Retirement Plans

Existing Funds[*]

Absolute Return Mortgage Non-Lending Fund
Active REIT Non-Lending Fund
Active U.S. Large Cap Core Non-Lending Fund
Active U.S. Large Cap Core Non-Lending Series Fund
Active U.S. Large Cap Growth Non-Lending Fund
Active U.S. Large Cap Growth Non-Lending Series Fund
Active U.S. Large Cap Value Non-Lending Fund
Active U.S. Large Cap Value Non-Lending Series Fund
Active U.S. Mid Cap Non-Lending Fund
Active U.S. Mid Cap Non-Lending Series Fund
Active U.S. Small Cap Non-Lending Fund
Active U.S. Small Cap Securities Lending Fund
Active U.S. Small Cap Securities Lending Series Fund
Active U.S. Value/Growth Non-Lending Fund
Active U.S. Value/Growth Non-Lending Series Fund
Aggressive Strategic Balanced Securities Lending Fund
Allstate Balanced Non-Lending Fund
Asset Backed Index  Securities Lending Fund
Asset Backed Index Non-Lending Fund
Asset Backed/Commercial Mortgage Backed Index Non-Lending Fund
Australia MSCI Index Non-Lending Fund
Australia MSCI Index Securities Lending Fund
Australia Primary Market Index Securities Lending Fund
Austria MSCI Index Non-Lending Fund
Austria MSCI Index Securities Lending Fund
Austria Primary Market Index Securities Lending Fund
Balanced Growth Active Securities Lending Fund
Balanced Growth Index Securities Lending Fund
Balanced Securities Lending Series Fund
Belgium MSCI Index Non-Lending Fund
Belgium MSCI Index Securities Lending Fund
Belgium Primary Market Index Securities Lending Fund
Bond Market Non-Lending Fund
Bond Market Non-Lending Series Fund
Canada MSCI Index Non-Lending Fund

Canada MSCI Index Securities Lending Fund
Canada Primary Market Index Securities Lending Fund
Canada Small Cap Index Securities Lending Fund
Cash Plus Non-Lending Fund
Citigroup PMI Global Ex-U.S. Index Plus Securities Lending Fund
Commercial Mortgage Backed Index Non-Lending Fund
Commercial Mortgage Backed Index Securities Lending Fund
Conservative Strategic Balanced Securities Lending Fund
Country Selection ERISA Securities Lending Fund
Credit 1-3 Year Index Non-Lending Fund
Credit 1-3 Year Index Securities Lending Fund
Credit 3-10 Year Index Non-Lending Fund
Credit 3-10 Year Index Securities Lending Fund
Credit Non-Lending Fund
Daily Active Emerging Markets Non-Lending Fund
Daily Active Emerging Markets Securities Lending Fund
Daily EAFE Hedged Non-Lending Series Fund
Daily EAFE Index Non-Lending Series Fund
Daily EAFE Index Securities Lending Series Fund
Daily EAFE Non-Lending Fund
Daily EAFE Non-Lending Series Fund
Daily EAFE Securities Lending Fund
Daily EAFE Securities Lending Fund
Daily EAFE Securities Lending Series Fund
Daily Emerging Markets Index Non-Lending  Series Fund
Daily Emerging Markets Index Non-Lending Fund
Daily International Alpha Securities Lending Fund
Daily International Alpha Securities Lending Series Fund
Daily International Alpha Transition Non-Lending Fund
Daily MSCI Europe Index Non-Lending Fund
Daily MSCI Europe Index Securities Lending Fund
Daily MSCI Japan Index Non-Lending Fund
Daily MSCI Japan Index Securities Lending Fund
Daily MSCI Pacific Basin Ex-Japan Index Non-Lending Fund
Daily MSCI Pacific Basin Ex-Japan Index Securities Lending Fund
Denmark MSCI Index Non-Lending Fund
Denmark MSCI Index Securities Lending Fund
Denmark Primary Market Index Securities Lending Fund
Developed Primary Market Securities Lending Fund
Diversified International Equity Securities Lending Fund
Diversified Large Cap Growth Securities Lending Fund
Diversified Large Cap Value Securities Lending Fund
Diversified Small Cap Securities Lending Fund
Diversified U.S. Bond Securities Lending Fund
Dow Jones Target 2015  Securities Lending Series Fund
Dow Jones Target 2025 Securities Lending Series Fund

Dow Jones Target 2035 Securities Lending Series Fund
Dow Jones Target 2045 Securities Lending Series Fund
Dow Jones Target Today Securities Lending Series Fund
Enhanced MSCI Europe Index Securities Lending Fund
Enhanced Pacific Basin Securities Lending Fund
Europe Small Cap Index Securities Lending Fund
Europe Stock Performance Index Futures Fund
Finland MSCI Index Non-Lending Fund
Finland MSCI Index Securities Lending Fund
Finland Primary Market Index Securities Lending Fund
France MSCI Index Non-Lending Fund
France MSCI Index Securities Lending Fund
France Primary Market Index Securities Lending Fund
Fundamental Active Bond Non-Lending Fund
Germany MSCI Index Non-Lending Fund
Germany MSCI Index Securities Lending Fund
Germany Primary Market Index Securities Lending Fund
Global Fixed Income Opportunities Securities Lending Fund
Government Credit Bond Non-Lending Fund
Government Credit Bond Non-Lending Series Fund
Government Non-Lending Fund
Government Short Term Investment Fund
Greece MSCI Index Non-Lending Fund
Greece Primary Market Index Securities Lending Fund
Growth Index Securities Lending Fund
Hong Kong MSCI Index Non-Lending Fund
Hong Kong MSCI Index Securities Lending Fund
Hong Kong Primary Market Index Securities Lending Fund
Iceland Primary Market Index Securities Lending Fund
Income and Growth Index Securities Lending Fund
Index Plus Non-Lending Fund
Index Plus Securities Lending Fund
Index Plus Securities Lending Series Fund
Intermediate Bond Securities Lending Fund
Intermediate Bond Securities Lending Series Fund
Intermediate Credit Index Non-Lending Fund
Intermediate Credit Index Securities Lending Fund
Intermediate U.S. Government Index Non-Lending Fund
Intermediate U.S. Government Index Securities Lending Fund
International Alpha Select Securities Lending Fund
International Bond Securities Lending Fund
International Growth Opportunities Non-Lending Fund
International Growth Opportunities Non-Lending Series Fund
International Growth Opportunities Securities Lending Fund
International Growth Opportunities Securities Lending Series Fund
International Markets Securities Lending Fund

International Stock Performance Index Futures Fund
Ireland MSCI Index Non-Lending Fund
Ireland Primary Market Index Securities Lending Fund
Italy MSCI Index Non-Lending Fund
Italy MSCI Index Securities Lending Fund
Italy Primary Market Index Securities Lending Fund
Japan MSCI Index Non-Lending Fund
Japan MSCI Index Securities Lending Fund
Japan Primary Market Index Securities Lending Fund
Korea Primary Market Index Securities Lending Fund
Large Growth Index Securities Lending Fund
Large Growth Index Securities Lending Series Fund
Large Value Index Securities Lending Fund
Large Value Index Securities Lending Series Fund
Life Solutions Balanced Growth Active (II) Securities Lending Fund
Life Solutions Balanced Growth Index (I) Securities Lending Fund
Life Solutions Balanced Growth Index (II) Securities Lending Fund
Life Solutions Growth Active (II) Securities Lending Fund
Life Solutions Growth Index (I) Securities Lending Fund
Life Solutions Growth Index (II) Securities Lending Fund
Life Solutions Income and Growth Active (II) Securities Lending Fund
Life Solutions Income and Growth Index (I) Securities Lending Fund
Life Solutions Income and Growth Index (II) Securities Lending Fund
Limited Duration Bond Non-Lending Fund
Long Credit Index Non-Lending Fund
Long Credit Index Securities Lending Fund
Long Credit Index Securities Lending Series Fund
Long U.S. Agency Index Non-Lending Fund
Long U.S. Agency Index Securities Lending Fund
Long U.S. Government Index Non-Lending Fund
Long U.S. Government Index Securities Lending Fund
Long U.S. Government Index Securities Lending Series Fund
Long U.S. Treasury Index Non-Lending Fund
Long U.S. Treasury Index Securities Lending Fund
Maryland Russell 3000 Index Securities Lending Fund
Moderate Strategic Balanced Securities Lending Fund
Mortgage Backed Index Non-Lending Fund
Mortgage Backed Index Securities Lending Fund
Mortgage Non-Lending Fund
MSCI Consumer Discretionary Sector Index Securities Lending Fund
MSCI Consumer Staples Sector Index Securities Lending Fund
MSCI EAFE Index Non-Lending Fund
MSCI EAFE Index Securities Lending Fund
MSCI EAFE International Alpha Non-Lending Fund
MSCI EAFE International Alpha Securities Lending Fund
MSCI Energy Sector Index Securities Lending Fund

MSCI Financials Sector Index Securities Lending Fund
MSCI Health Care Sector Index Securities Lending Fund
MSCI Industrials Sector Index Securities Lending Fund
MSCI Information Technology Sector Index Securities Lending Fund
MSCI Materials Sector Index Securities Lending Fund
MSCI Telecommunications Sector Index Securities Lending Fund
MSCI Utilities Sector Index Non-Lending Fund
NASDAQ 100 Index Non-Lending Series Fund
Netherlands MSCI Index Non-Lending Fund
Netherlands MSCI Index Securities Lending Fund
Netherlands Primary Market Index Securities Lending Fund
New Zealand MSCI Index Non-Lending Fund
New Zealand MSCI Index Securities Lending Fund
New Zealand Primary Market Index Securities Lending Fund
Norway MSCI Index Non-Lending Fund
Norway MSCI Index Securities Lending Fund
Norway Primary Market Index Securities Lending Fund
Pacific Small Cap Index Securities Lending Fund
Pacific Stock Performance Index Futures Fund
Passive Bond Market Index Non-Lending Fund
Passive Bond Market Index Securities Lending Fund
Passive Bond Market Index Securities Lending Series Fund
Passive Government Credit Bond Index Securities Lending Fund
Passive Government Credit Bond Index Securities Lending Series Fund
Passive Intermediate Aggregate Bond Index Securities Lending Fund
Passive Intermediate Bond Index Securities Lending Fund
Passive Intermediate Bond Index Securities Lending Series Fund
Passive Intermediate Government Credit Bond Index Non-Lending Fund
Passive Intermediate Government Credit Bond Index Securities Lending Fund
Passive World Government Bond ex-U.S. Index Non-Lending Fund
Passive World Government Bond ex-U.S. Securities Lending Fund
Passive World Government Bond Ex-U.S. Securities Lending Series Fund
Portugal MSCI Index Non-Lending Fund
Portugal MSCI Index Securities Lending Fund
Portugal Primary Market Index Securities Lending Fund
Principal Accumulation Return Fund
Prosperia Equity Securities Lending Fund
Prosperia Fixed Securities Lending Fund
Prosperia Short-term Fixed Securities Lending Fund
REIT Index Non-Lending Fund
REIT Index Non-Lending Series Fund
Rexiter Daily Active Emerging Markets Non-Lending Fund
Rexiter Daily Active Emerging Markets Non-Lending Series Fund
Russell 1000 Equity Index Securities Lending Fund
Russell 1000 Growth Index Non-Lending Fund
Russell 1000 Growth Index Securities Lending Fund

Russell 1000 Growth Index Securities Lending Series Fund
Russell 1000 Index Securities Lending Fund
Russell 1000 Index Securities Lending Series Fund
Russell 1000 Value Index Non-Lending Fund
Russell 1000 Value Index Securities Lending Fund
Russell 1000 Value Index Securities Lending Series Fund
Russell 2000 Growth Index Securities Lending Fund
Russell 2000 Growth Index Securities Lending Series Fund
Russell 2000 Index Non-Lending Fund
Russell 2000 Index Non-Lending Series Fund
Russell 2000 Index Securities Lending Fund
Russell 2000 Index Securities Lending Series Fund
Russell 2000 Value Index Securities Lending Fund
Russell 2000 Value Index Securities Lending Series Fund
Russell 2500 Index Securities Lending Fund
Russell 3000 Equity Index Securities Lending Fund
Russell 3000 Index Non-Lending Fund
Russell 3000 Index Non-Lending Fund
Russell 3000 Index Plus Securities Lending Fund
Russell 3000 Index Plus Securities Lending Series Fund
Russell 3000 Index Securities Lending Fund
Russell 3000 Index Securities Lending Series Fund
Russell Small Cap Completeness Index Non-Lending Fund
Russell Small Cap Completeness Index Non-Lending Series Fund
Russell Small Cap Completeness Index Securities Lending  Fund
Russell Small Cap Completeness Index Securities Lending Series Fund
Russell Top 200 Growth Non-Lending Fund
Russell Top 200 Index Non-Lending Fund
Russell Top 200 Value Non-Lending Fund
S&P 500 Conservative Index Non-Lending Fund
S&P 500 Conservative Index Non-Lending Provisional Fund
S&P 500 Flagship Non-Lending Fund
S&P 500 Flagship Non-Lending Provisional Fund
S&P 500 Flagship Non-Lending Series Fund
S&P 500 Flagship Securities Lending Fund
S&P 500 Flagship Securities Lending Provisional Fund
S&P 500 Flagship Securities Lending Series Fund
S&P 500 Value/Growth Selection Securities Lending Fund
S&P Growth Index Securities Lending Fund
S&P Growth Index Securities Lending Provisional Fund
S&P Growth Index Securities Lending Series Fund
S&P Midcap Index Non-Lending Fund
S&P Midcap Index Non-Lending Provisional Fund
S&P Midcap Index Non-Lending Series Fund
S&P Midcap Index Securities Lending Fund
S&P Midcap Index Securities Lending Provisional Fund

S&P Midcap Index Securities Lending Series Fund
S&P Value Index Securities Lending Fund
S&P Value Index Securities Lending Provisional Fund
S&P Value Index Securities Lending Series Fund
Short Term Bond Non-Lending Fund
Short Term Bond Securities Lending Fund
Short Term Investment Fund (STIF)
Singapore MSCI Index Non-Lending Fund
Singapore MSCI Index Securities Lending Fund
Singapore Primary Market Index Securities Lending Fund
Small Cap Growth Index Plus Non-Lending Fund
Small Cap Growth Opportunities Non-Lending Fund
Small Cap Growth Opportunities Securities Lending Fund
Small Cap Index Plus Securities Lending Fund
Small Cap Index Plus Securities Lending Series Fund
Small Growth Index Non-Lending Fund
Small Growth Index Non-Lending Series Fund
Small Value Index Non-Lending Fund
Small Value Index Non-Lending Series Fund
Small Value Index Securities Lending Fund
Small Value Index Securities Lending Series Fund
Socially Responsible Equity Securities Lending Fund
Socially Responsible Equity Securities Lending Series Fund
Spain MSCI Index Non-Lending Fund
Spain MSCI Index Securities Lending Fund
Spain Primary Market Index Securities Lending Fund
SSgA Age-Based 2010 Securities Lending Series Fund
SSgA Age-Based 2020 Securities Lending Series Fund
SSgA Age-Based 2030 Securities Lending Series Fund
SSgA Age-Based 2040 Securities Lending Series Fund
SSgA Age-Based Income Securities Lending Series Fund
Stable Income Fund II
Stable Value Fund
Stock Performance Index Futures Fund
Sweden MSCI Index Non-Lending Fund
Sweden MSCI Index Securities Lending Fund
Sweden Primary Market Index Securities Lending Fund
Switzerland MSCI Index Non-Lending Fund
Switzerland MSCI Index Securities Lending Fund
Switzerland Primary Market Index Securities Lending Fund
Treasury Inflation Protected Securities Index Non-Lending Fund
Treasury Inflation Protected Securities Index Non-Lending Series Fund
Treasury Inflation Protected Securities Index Securities Lending Fund
U.S. Agency 1-3 Year Index Non-Lending Fund
U.S. Agency 1-3 Year Index Securities Lending Fund
U.S. Agency 3-10 Year Index Non-Lending Fund

U.S. Agency 3-10 Year Index Securities Lending Fund
U.S. Aggressive Growth Non-Lending Fund
U.S. Core Opportunities Non-Lending Fund
U.S. Core Opportunities Non-Lending Series Fund
U.S. Dollar Libor Plus Non-Lending Fund
U.S. Extended Market Index Non-Lending Fund
U.S. Extended Market Index Securities Lending Fund
U.S. Extended Market Index Securities Lending Series Fund
U.S. Large Cap Growth Opportunities Non-Lending Fund
U.S. Large Cap Growth Opportunities Non-Lending Series Fund
U.S. Small Cap Index Futures Fund
U.S. Total Market Index  Non-Lending Fund
U.S. Total Market Index Securities Lending Fund
U.S. Total Market Index Securities Lending Provisional Fund
U.S. Total Market Index Securities Lending Series Fund
U.S. Treasury 1-3 Year Index Non-Lending Fund
U.S. Treasury 1-3 Year Index Securities Lending Fund
U.S. Treasury 3-10 Year Index Non-Lending Fund
U.S. Treasury 3-10 Year Index Securities Lending Fund
United Kingdom MSCI Index Non-Lending Fund
United Kingdom MSCI Index Securities Lending Fund
United Kingdom Primary Market Index Securities Lending Fund
Yield Enhanced Short Term Investment Fund

*The full title of each of the funds listed above is preceded by "The State Street Bank and Trust Company".